**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GIANT EAGLE, INC. and HBC SERVICE COMPANY, | ) | No. 2:19-cv-00904-RJC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| GIANT EAGLE, INC. and HBC SERVICE COMPANY, | ) | No. 2:22-cv-00468-RJC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER OF COURT

Robert J. Colville, United States District Judge

Before the Court are a number of discovery motions that have been filed by the parties in the-above captioned matters, which have been coordinated for pretrial proceedings.[1]  *See* Case 1, ECF No. 269; Case 2, ECF No. 93.  The Court has jurisdiction in these matters pursuant to 28 U.S.C. § 1332.  The motions at issue have been fully briefed and are ripe for disposition.

---

[1] Consistent with the terminology utilized by the parties, the Court will utilize the term "Case 1" to refer to the matter at 19-cv-904 and will utilize the term "Case 2" to refer to the matter at 22-cv-468.

I.      **Factual Background & Procedural History**

This Court has already issued several opinions in Case 1 (ECF Nos. 112; 179; 198; 249), and, in doing so, has set forth in detail most of the relevant factual background and procedural history relevant to the Court's consideration of the discovery motions at issue.  The Court borrows heavily from its previous descriptions of the factual background and procedural history of these cases below, and will supplement the same where necessary:[2]

In these declaratory judgment actions, Giant Eagle seeks a declaration that Defendants owe Giant Eagle a duty to defend (or reimbursement of defense costs) and coverage with respect to multiple lawsuits pending against Giant Eagle in the action captioned *In re Nat'l Prescription Opiate Litig.*, No. 2804 (N. D. Ohio) ("Opioid MDL").  Opinion 2, ECF No. 112.  In its Motion for Partial Summary Judgment in Case 1, Giant Eagle sought partial summary judgment declaring that AGLIC and XL owed a duty to defend Giant Eagle in four cases[3] that were transferred to the Opioid MDL.  *Id.*  This Court granted Giant Eagle's Motion for Partial Summary Judgment, and held as follows:

> The Court finds that declaratory judgment is appropriate with respect to Count I of Plaintiffs' First Amended Complaint (ECF No. 46), and holds that Defendant American Guarantee and Liability Insurance Company owes a duty to defend Plaintiffs under Commercial Umbrella Liability Policy, No. AUC 2856587-17 and

---

[2] While the Court's prior opinions dealt exclusively with Case 1, the Court notes that the allegations against the Defendants in Case 2 are materially similar to those alleged against the Defendants in Case 1.  The Defendants named in Case 1 are American Guarantee and Liability Insurance Company ("AGLIC") and XL Specialty Insurance Company ("XL").  The Defendants named in Case 2 are: AGLIC; Discover Property and Casualty Insurance Company ("Discover"); St. Paul Fire and Marine Insurance Company ("St. Paul"); Liberty Insurance Underwriters, Inc. ("Liberty"); Federal Insurance Company ("Federal"); and Great American Insurance Company of New York ("Great American").  Giant Eagle's claims against The American Insurance Company were voluntarily dismissed without prejudice by Giant Eagle on July 12, 2023.  The Court will point to any material distinctions in the allegations against the Defendants where necessary.  In the interest of efficiency, the Court has not modified its prior description of the facts to reflect the allegations in Case 2, and all citations to docket entries in this subsection refer to Case 1 unless otherwise noted.

[3] These cases were: *County of Cuyahoga, Ohio v. Purdue Pharma L.P., et al.*, Case No 17-OP-45004 (N.D. Ohio); *County of Summit, Ohio v. Purdue Pharma L.P., et al.*, Case No 18-OP-45090 (N.D. Ohio); *Artz, et al. v. Endo Health Solutions, Inc., et al.*, Case No 19-op-45459 (N.D. Ohio); and *Frost, et. al. v. Endo Health Solutions, Inc., et al.*, Case No 18-op-46327 (N.D. Ohio).  *See* Proposed Order 2-3, ECF No. 75-1.

that Defendant XL Specialty Insurance Company owes a duty to defend Plaintiffs under Commercial Excess Follow Form and Umbrella Liability Policy No. US00074903LI16A in the following lawsuits: *County of Cuyahoga, Ohio v. Purdue Pharma L.P., et al.*, Case No 17-OP-45004 (N.D. Ohio); *County of Summit, Ohio v. Purdue Pharma L.P., et al.*, Case No 18-OP-45090 (N.D. Ohio); *Artz, et al. v. Endo Health Solutions, Inc., et al.*, Case No 19-op-45459 (N.D. Ohio); and *Frost, et. al. v. Endo Health Solutions, Inc., et al.*, Case No 18-op-46327 (N.D. Ohio).

Order 2, ECF No. 113.

As laid out in that Opinion, the relevant background with respect to Giant Eagle's Motion for Partial Summary Judgment was as follows:

Giant Eagle was covered by commercial general liability policies issued by Third-Party Defendant Old Republic Insurance Company ("Old Republic") which ran from April 1, 2015 to April 1, 2016 (the "2016 Old Republic Policy") and from April 1, 2016 to April 1, 2017 (the "2017 Old Republic Policy") (collectively, the "Old Republic Policies"). Resp. to SOF ¶ 1, ECF No. 88. Each of the Old Republic Policies provides a $1 million per occurrence limit of liability, subject to a $1 million self-insured retention ("SIR") obligation and a $1 million deductible.[4]  *Id*. at ¶ 3. The Old Republic Policies define "self-insured retention" as "the amount the insured legally must pay with respect to claims or 'suits' to which this insurance applies."  Resp. to Additional SOF ¶ 10, ECF No. 94.  The Old Republic Policies' SIR endorsements provide:

**A.** Our obligations under the Coverages of the policy to pay damages on your behalf apply in excess of the "self insured retention".  The amount of the "self insured retention" is shown in the Schedule.

**B.** The "self insured retention" may be satisfied by any combination of the following:

**1.** Damages and medical expenses payable under the applicable Coverage(s).

---

[4]  The deductible "[e]quals the Limits of Insurance/Liability as provided under the policy plus all ALAE/Supplementary Payments."  App. Ex. 4 at 16, ECF No. 77.  There is seemingly no dispute that the amount payable under the deductible obligation at issue herein is $1 million. *See* Br. in Supp. of MSJ 13, ECF No. 76; Defs.' Br. in Opp'n 15, ECF No. 87.

**2.** Other amounts payable under the policy.

**C.** Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expense(s) (ALAE) do not satisfy the "self insured retention".

If Supplementary Payments and/or allocated loss adjustment expense(s) are not described in the policy, Supplementary Payments and/or allocated loss adjustment expense(s) are costs associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to defense costs, attorneys' fees, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit".

**D.** In addition to the Scheduled "self insured retention" you are responsible for payment of a proportion of Supplementary Payments and/or allocated loss adjustment expenses. Your proportion is equal to the ratio that the "self insured retention" amount bears to the damages and medical expenses paid. If there is no loss payment, your proportion of Supplementary Payments and/or allocated loss adjustment expenses is 100%.

**E.** The "self insured retention" will apply on the same basis as the Limits of Insurance (Limits of Liability) applicable to the claim or "suit" regardless of the number of persons or organizations who sustain damages. The "self insured retention" is an each and every "self insured retention" and does not have an aggregate.

**F.** The "self insured retention" will not reduce the applicable Limits of Insurance (Limits of Liability).

**G.** We do not have a duty to investigate, defend or settle any claim or "suit" for which there may be coverage under this insurance within the "self insured retention". Our right and duty to defend or settle any claim or "suit" do apply to any claim or "suit" that exceeds the "self insured retention".

You, at your own expense, must investigate, defend or settle all claims or "suits" within the "self insured retention". We retain the right to elect to join in the defense of such claims or "suits" and we will pay any expenses we incur in doing so.

Old Republic's Br. in Opp'n 3-4, ECF No. 89 (emphasis omitted) (quoting App. Ex. 3 at 21-22; Ex. 4 at 18-19, ECF No. 77). The Old Republic Policies' deductible endorsements, in relevant part, provide:

**A.** Our obligations under the Coverages of the policy to pay damages are subject to a deductible.  The deductible is shown in the Schedule.  Our obligations to pay damages apply only to the amount of damages in excess of the deductible shown in the Schedule.

**B.** The deductible may be satisfied by any combination of the following:

> **1.** Damages and medical expenses payable under the applicable Coverage(s).

> **2.** Other amounts payable under the policy.

> **3.** Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE):

> . . . .

>  X   Amounts payable under Supplementary Payments, which include but are not limited to allocated loss adjustment expenses (ALAE) do not satisfy the deductible.  In addition to the Scheduled deductible you are responsible for payment of Supplementary Payments and/or allocated loss adjustment expenses.

> If Supplementary Payments and/or allocated loss adjustment expenses (ALAE) are not described in the policy, Supplementary Payments and/or allocated loss adjustment expenses are costs associated with the investigation or settlement of any claim or "suit" against an insured and include but are not limited to defense costs, attorneys' fees, premiums for appeal and bail bonds, prejudgment and post judgment interest, expenses incurred by the insurer, first aid expenses, and/or reasonable travel expenses incurred by the insured at our request when assisting in the investigation or settlement of any claim or "suit".

**C.** The deductible will apply on the same basis as the Coverage(s) Limits of Insurance/Limit of Liability applicable to the claim or "suit" regardless of the number of persons or organizations who sustain damages.

**D.** The deductible amounts:

> . . . .

>  X   Described in paragraph B.1. and B.2. will reduce the applicable Limits of Insurance/Limits of Liability.

*Id.* at 5-6 (emphasis omitted) (quoting App. Ex. 3 at 19-20; Ex. 4 at 16-17, ECF No. 77). The Old

Republic Policies describe "Supplementary Payments" as follows:

> 1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
>> a. All expenses we incur.
>>
>> b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.
>>
>> c. The cost of bonds to release attachments, but only for bond amounts within the applicable limits of insurance. We do not have to furnish these bonds.
>>
>> d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.
>>
>> e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.
>>
>> f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
>>
>> g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we gave paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

Resp. to SOF ¶ 14, ECF No. 88.

Giant Eagle and Old Republic separately entered into a Program Agreement (the "Program

Agreement") that defines "Allocated Loss Adjustment Expenses" ("ALAE") to include defense

costs and attorneys' fees. Resp. to SOF ¶ 49, ECF No. 88; *see also* App. Ex. 11 at 2, ECF No. 77.

The Program Agreement provides that Giant Eagle is responsible for payment of all ALAE and

loss, and that ALAE are in addition to Giant Eagle's retention for loss and the Old Republic

Policies' policy limits.  App. Ex. 11 at 3; 34; 37, ECF No. 77.  The Program Agreement further provides: "[t]o the extent that any terms or conditions of the aforesaid Policies are inconsistent with any of the terms or conditions of this Agreement, the latter are to be given effect and the former will be considered superseded by this Agreement."  Resp. to SOF ¶ 50, ECF No. 88.  The Program Agreement also contains a provision which states: "this Agreement, together with the Policies issued hereunder, represents the entire agreement between the parties with respect to the subject matter hereof."  App. Ex. 11 at 12, ECF No. 77.   The "aforesaid Policies" and "Policies issued hereunder" referenced by the Program Agreement include the Old Republic Policies.  *See* App. Ex. 11 at 34-40; Ex. 3; Ex. 4, ECF No. 77.

The Old Republic Policies provide that Old Republic "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Resp. to SOF ¶ 8, ECF No. 88.  Under the Old Republic Policies, "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'"  *Id.* at ¶ 13.  The Old Republic Policies further provide that Old Republic has the right and duty to defend against any suit seeking such damages.  *Id.* at ¶ 9.  The Old Republic Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  *Id.* at ¶ 10.  The Old Republic Policies apply to bodily injury if the bodily injury is caused by an "occurrence" that takes place in the "coverage territory" and occurs during the policy period.  *Id.* at ¶ 11.  "Occurrence" is defined by the Old Republic Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.* at ¶ 12.

AGLIC issued Commercial Umbrella Liability Policy, No. AUC 2856587-17 (the "AGLIC Policy") to Giant Eagle for the period of April 1, 2015 to April 1, 2016.  Resp. to SOF ¶ 16, ECF No. 88.  The AGLIC Policy identifies the 2016 Old Republic Policy as "underlying insurance," and provides, under "Coverage A,"[5] that AGLIC will pay "those damages covered by this insurance in excess of the total applicable limits of underlying insurance."  *Id.* at ¶¶ 17-18. AGLIC's duty to defend arises under the AGLIC Policy's Coverage A "when the applicable limit of underlying insurance . . . has been exhausted by payment of loss for which coverage is afforded under [the AGLIC Policy] . . . ."  *Id.* at ¶ 19.  The AGLIC Policy defines "loss" as "those sums actually paid that [Giant Eagle] is legally obligated to pay as damages for the settlement or satisfaction of a claim[,]" and further provides that: (1) "[l]oss also includes defense expenses and supplementary payments if underlying insurance includes defense expenses and supplementary payments in the Limits of Insurance;" and (2) "[l]oss does not include defense expenses and supplementary payments if underlying insurance does not include defense expenses and supplementary payments in the Limits of Insurance."  *Id.* at ¶ 19; Resp. to Additional SOF ¶ 47, ECF No. 94; App. Ex. 1 at 22, ECF No. 77.

XL issued Commercial Excess Follow Form and Umbrella Liability Policy No. US00074903LI16A (the "XL Policy") to Giant Eagle for the period of April 1, 2016 to April 1, 2017.  Resp. to SOF ¶ 20, ECF No. 88.  The XL Policy identifies the 2017 Old Republic Policy as the scheduled underlying insurance.  *Id.* at ¶ 21.  Under Insuring Agreement A[6] in the XL Policy, XL is required to pay on behalf of Giant Eagle:

---

[5] Coverage A provides for the "Excess Follow Form Liability Insurance" provided by AGLIC that is relevant herein. *See* App. Ex. 1 at 13, ECF No. 77.

[6] Insuring Agreement A provides for the "Excess Follow Form Liability" insurance that is relevant herein.  *See* App. Ex. 2 at 19, ECF No. 77.

> [T]hose amounts [Giant Eagle] becomes legally obligated to pay as damages in excess of the "scheduled underlying insurance" as a result of a "claim" covered by the "scheduled underlying insurance" and this policy, but only if the actual payment of "loss" to which this policy applies, by you or insurers providing "scheduled underlying insurance" exceeds the limits of the "scheduled underlying insurance" and any applicable and collectible "other insurance."

Resp. to Additional SOF ¶ 57, ECF No. 94 (quoting App. Ex. 2 at 47, ECF No. 77).  With respect to XL's duty to defend Giant Eagle, the XL Policy provides:

> [XL] will have the right and duty to defend any "suit" covered by Insuring Agreement A, but only if the actual payment of "loss" to which this policy applies, by you or insurers providing "scheduled underlying insurance" exceeds the limits of the "scheduled underlying insurance" and any applicable and collectible "other insurance."

*Id.* at ¶ 59.  The XL Policy defines "loss" as: "those sums you become legally obligated to pay as settlements or judgments in connection with a covered 'claim.'  'Loss' shall include expenses incurred to investigate a 'claim' or defend a 'suit' if so provided in the 'scheduled underlying insurance.'"  *Id.* at ¶ 60.  The XL Policy's Schedule of Underlying Limits identifies the 2017 Old Republic Policy and its limits and states that "[d]efense expenses are in addition to the limits."  Resp. to Additional SOF ¶ 62, ECF No. 94.

Giant Eagle has been named as a defendant in multiple lawsuits by plaintiffs who seek to recover damages allegedly caused by Giant Eagle's distribution and dispensing of prescription opioids.  Resp. to SOF ¶ 24, ECF No. 88; Resp. to Additional SOF ¶ 82, ECF No. 94.  The *Artz* and *Frost* actions (collectively, the "NAS lawsuits") assert claims by legal guardians, on behalf of putative classes of legal guardians, of children diagnosed at birth with opioid dependence, known as Neonatal Abstinence Syndrome ("NAS").  Resp. to SOF ¶ 30, ECF No. 88.  The complaints in the NAS lawsuits allege that NAS caused the plaintiff guardians' children to suffer health conditions and increased risk of certain health conditions as a result of their in utero exposure to opioids.  *Id.* at ¶¶ 32-35.  The plaintiffs in the NAS lawsuits seek damages for ongoing care

allegedly necessitated by, inter alia, Giant Eagle's alleged wrongful conduct in distributing and dispensing opioids. *Id.* at ¶¶ 33-35.

The *Summit* and *Cuyahoga* actions (collectively, the "County lawsuits") were filed on behalf of Ohio counties seeking damages allegedly caused by Giant Eagle's alleged wrongful conduct in distributing and dispensing prescription opioids. *Id.* at ¶ 36. The plaintiffs in the County lawsuits allege that the opioid use resulting from Giant Eagle's conduct has led directly to "a dramatic increase in opioid abuse, addiction, overdose, and death throughout the United States," including in Ohio. *Id.* at ¶ 37. The complaints in the County lawsuits also aver that the plaintiffs in those actions do "not seek damages for death, physical injury to person, emotional distress, or physical damages to property, as defined under the Ohio Product Liability Act." *Id.* at ¶ 37; Resp. to Additional SOF ¶ 82, ECF No. 99. The complaints in the County lawsuits assert that the plaintiffs in those actions have suffered ongoing harm, and seek damages, inter alia, for emergency medical treatment, detoxification and addiction treatment, and recovery services related to opioid use of the County plaintiffs' citizens. Resp. to SOF ¶ 39, ECF No. 88. Each of the underlying lawsuits asserts, to some degree, that Giant Eagle "failed to design and operate systems to identify suspicious orders of prescription opioids, maintain effective controls against diversion, and halt suspicious orders when they were identified, thereby contributing to the oversupply of such drugs and fueling an illegal secondary market." *Id.* at ¶ 44.

Giant Eagle asserts that it has spent at least $5.7 million in defending against the underlying lawsuits.[7] Resp. to SOF ¶ 47, ECF No. 88. AGLIC has not reimbursed Giant Eagle for any of Giant Eagle's purported defense costs. *Id.* at ¶ 48. Giant Eagle avers that, to date, AGLIC has "denied coverage and refused outright to defend or indemnify Giant Eagle" in the Opioid MDL

---

[7] That number has increased to more than $30 million according to Plaintiff's Second Amended Complaint. *See* ECF No. 233 at ¶ 11.

lawsuits, and that "XL, after simply ignoring Giant Eagle's multiple requests for a defense for six months, issued a reservation of rights without assuming a defense."  Compl. ¶ 2, ECF No. 46. Neither AGLIC nor XL challenges, in any material respect, the assertion that neither has provided a defense to Giant Eagle in the underlying lawsuits.  *See* AGLIC's Answer ¶ 2, ECF No. 52; XL's Answer ¶ 2, ECF No. 53.  Old Republic has not paid any defense costs to or on behalf of Giant Eagle with respect to any of the underlying lawsuits, and further has not paid any judgment or settlement to or on behalf of Giant Eagle with respect to any of the underlying lawsuits.  Resp. to Additional SOF ¶ 28-29, ECF No. 99.

The Court's November 9, 2020 Opinion (ECF No. 112) and Order of Court (ECF No. 113) in this matter granted the Motion for Partial Summary Judgment on the Duty to Defend (ECF No. 75) filed by Giant Eagle.  By way of its Motion for Partial Summary Judgment, Giant Eagle sought partial summary judgment declaring that AGLIC and XL owe a duty to defend Giant Eagle in four cases that have been transferred to the Opioid MDL under certain of the excess insurance policies issued to Giant Eagle by AGLIC and XL (the "AGLIC Policy" and the "XL Policy," as defined in this Court's previous Opinions).  In support of its Motion for Partial Summary Judgment, Giant Eagle argued, inter alia, that its payment of defense costs in these underlying lawsuits could trigger AGLIC's duty to defend under the AGLIC Policy and XL's duty to defend under the XL Policy. This Court granted Giant Eagle's Motion for Partial Summary Judgment, and ultimately held as follows:

> The Court finds that declaratory judgment is appropriate with respect to Count I of Plaintiffs' First Amended Complaint (ECF No. 46), and holds that Defendant American Guarantee and Liability Insurance Company owes a duty to defend Plaintiffs under Commercial Umbrella Liability Policy, No. AUC 2856587-17 and that Defendant XL Specialty Insurance Company owes a duty to defend Plaintiffs under Commercial Excess Follow Form and Umbrella Liability Policy No. US00074903LI16A in the following lawsuits: *County of Cuyahoga, Ohio v. Purdue Pharma L.P., et al.*, Case No 17-OP-45004 (N.D. Ohio); *County of Summit, Ohio*

> *v. Purdue Pharma L.P., et al.*, Case No 18-OP-45090 (N.D. Ohio); *Artz, et al. v. Endo Health Solutions, Inc., et al.*, Case No 19-op-45459 (N.D. Ohio); and *Frost, et. al. v. Endo Health Solutions, Inc., et al.*, Case No 18-op-46327 (N.D. Ohio).

Order 2, ECF No. 113.

On December 2, 2020, AGLIC filed a Motion for Reconsideration (ECF No. 123) with respect to the Court's November 9, 2020 Opinion and Order of Court, and XL subsequently joined in the request for relief made therein, *see* ECF No. 133.  Following extensive briefing, the Court entered its May 25, 2021 Opinion (ECF No. 179) and Order of Court (ECF No. 180), which granted the Motion for Reconsideration, vacated the November 9, 2020 Opinion and Order of Court, and denied Giant Eagle's Motion for Partial Summary Judgment.  Order 2, ECF No. 180.  The basis for that decision is discussed at length in the Court's May 25, 2021 Opinion.  In summarizing the basis for its decision, the Court explained as follows:

> Upon reconsideration of Giant Eagle's Motion for Partial Summary Judgment, the Court finds . . . that Giant Eagle has not met its burden of establishing that there is no genuine dispute of material fact as to Giant Eagle's assertion that Giant Eagle's payment of defense costs in the underlying lawsuits constitutes payment of a "loss" which has exhausted or exceeded the limits of the Old Republic Policies such that the duty to defend under either the AGLIC Policy or the XL Policy has been triggered.  Because defense costs do not exhaust the Old Republic Policies, and because the 2016 Old Republic Policy must be exhausted before AGLIC's duty to defend arises under the AGLIC Policy, Giant Eagle has not met its burden of establishing that AGLIC's duty to defend under the AGLIC Policy has been triggered.  Further, under the clear terms of the policies relevant herein, the definition of "loss" in both the AGLIC Policy and the XL Policy does not include defense costs, and the payment of defense costs thus cannot trigger the duty to defend under either excess policy.  Accordingly, the Court cannot find that Giant Eagle has met its burden of establishing that AGLIC and XL owe Giant Eagle a defense in the underlying lawsuits at this time.  Giant Eagle's Motion for Partial Summary Judgment will be denied.

Op. 48, ECF No. 179.

Giant Eagle subsequently filed a Motion (ECF No. 186) seeking leave to file a second amended complaint in Case 1.  By way of that Motion, Giant Eagle sought to add six additional

insurers, each of whom issued at least one insurance policy to Giant Eagle during the timeframe of April 1, 2005 to April 1, 2018, as defendants in Case 1, and further sought to assert claims related to those policies and additional claims against AGLIC arising out of policies issued by AGLIC to Giant Eagle during the timeframe of April 1, 2005 to April 1, 2009.  The Court found that the proposed amendments in Giant Eagle's Motion would have resulted in a significant expansion of Case 1, with the addition of new parties, insurance policies, defenses, and potential further motion practice, all of which the Court held would have resulted in a burden on the Court and inefficient, piecemeal litigation.  The Court ultimately denied that Motion.  Following the denial of that Motion, Giant Eagle filed its complaint in Case 2 on March 17, 2022.

Giant Eagle then filed a second Motion (ECF No. 227) in Case 1 seeking leave to file a second amended complaint, explaining:

> The proposed amendments do not add new parties or policies.  They seek only to align the pleadings with Giant Eagle's recent settlement of most but not all the underlying opioid lawsuits.  First, the amended complaint asserts a claim for damages for Defendants' breach of their contractual duty to indemnify Giant Eagle for the settlement payment.  Second, consistent with this Court's May 25, 2021 Opinion (ECF No. 179), Giant Eagle seeks to supplement its pending duty-to-defend claims by expressly alleging that the settlement payment exhausts the limits of the policies underlying the Defendants' policies and triggers their duty to defend Giant Eagle in the non-settled and ongoing opioid lawsuits.

Br. in Supp. of Mot. to Amend 1, ECF No. 227.  The Court granted this second Motion seeking leave to amend, and Giant Eagle filed its Second Amended Complaint (ECF No. 233) in Case 1 on May 11, 2022.

On September 7, 2023, the Court dismissed without prejudice motions for partial summary judgment filed by AGLIC and XL in Case 1 at ECF Nos. 200 and 204.  In so doing, the Court explained as follows:

> In its Brief in Support, AGLIC makes patently clear that its Motion, which seeks judgment in AGLIC's favor on Giant Eagle's duty to defend related claims, relies

on argument that Giant Eagle cannot rely on its payment of defense costs in arguing that AGLIC owes a duty to defend Giant Eagle in the Opioid MDL:

> Each of these other policies is subject to substantively identical terms and overall structure as the 2016 AGLIC Policy. Like the 2016 AGLIC Policy, each of the AGLIC Policies is an excess policy that can be triggered only upon exhaustion of the self-insured retention ("SIR"), deductible, and limit of underlying insurance by payment of covered judgments or settlements, not defense costs. Unless and until Giant Eagle has incurred liability (other than defense costs) sufficient to exhaust the underlying policies, AGLIC's duty to defend under the excess AGLIC Policies has not been triggered.

AGLIC's Br. in Supp. 1-2, ECF No. 201; *see also id.* at 10 ("Unless and until there is a judgment or settlement in the Opioid Lawsuits covered under and sufficient to exhaust the Old Republic Policies' SIRs and limits, there is no ripe case or controversy regarding AGLIC's duty to defend."). XL's Brief makes clear that it relies on materially similar argument to that set forth by AGLIC. *See* XL's Br. in Supp. 7, ECF No. 205 ("XL has no duty to defend under the 2018 XL Policy because there has not been payment of a 'loss' (i.e., covered judgments or settlements, not defense costs) that exceeds the SIR, deductible, and limits of the underlying Old Republic Policy.").

Critically, and as noted above, Giant Eagle's Second Amended Complaint sets forth allegations that Giant Eagle has recently settled certain of the underlying Opioid MDL lawsuits for more than $2 million, that it continues to defend against several of the remaining Opioid MDL lawsuits, and that neither AGLIC nor XL has provided a defense in the Opioid MDL despite Giant Eagle's payment of these settlement amounts. Second Am. Complaint ¶¶ 2; 73; 87, ECF No. 233. Accordingly, Giant Eagle relies on a new trigger for AGLIC's and XL's duties to defend, and this Court is thus unable to award summary judgment on any of Giant Eagle's duty to defend related claims at this time. Giant Eagle raises argument to this effect in its briefing, and, in addressing the same, AGLIC and XL simply rely on argument that Giant Eagle has failed to definitively establish that any settlement has taken place. The Court notes that discovery is ongoing in this matter, and that information as to any settlement of any underlying Opioid MDL lawsuit can be pursued by way of discovery. The Court further notes that Giant Eagle attached a settlement agreement and Funds Transfer Notification (purportedly reflecting Giant Eagle's payment of a $6 million settlement amount) to its Motion seeking leave to amend. *See* ECF No. 226. In light of the above, the Court cannot conclude that summary judgment is appropriate as to any of Giant Eagle's claims at this time.

Further, and in any event, while both AGLIC and XL argue that summary judgment on their Counterclaims is appropriate at this time, the Court finds that it is in the interest of judicial efficiency and economy that these issues be deferred until the completion of discovery in this matter. This case has involved extensive motion practice, and the Court anticipates discussing deadlines for further, comprehensive

summary judgment motions following the completion of discovery. The Court finds that resolution of the Pending Motions at this time would do little to simplify or expedite this litigation moving forward, especially in light of Giant Eagle's recent amendment and the likelihood of further motion practice following discovery. AGLIC and XL may re-raise the issues presented in the Pending Motions following discovery in this matter, and can again make argument regarding the impact of the Court's prior holdings at that time. The Court believes, however, that consideration of all relevant issues following the completion of discovery is the most efficient use of both the Court's and the parties' time, and that the same will avoid inefficient, piecemeal adjudication in this matter. *See DMP Ltd. P'ship v. Caribou Coffee Co.*, No. CIV. A. 08-429, 2009 WL 2750257, at *3 (W.D. Pa. Aug. 26, 2009) ("Under the circumstances, Defendant's summary judgment Motion presents the type of piecemeal adjudication disfavored by federal courts."); *see also JDB Med., Inc. v. Sorin Grp.*, No. 07-CV-00350-REB-CBS, 2008 WL 791938, at *2 (D. Colo. Mar. 20, 2008) ("The piecemeal resolution of the issues raised in the motion for summary judgment will not simplify significantly or extenuate the evidence at trial.").

Accordingly, for the reasons discussed above, the Court will dismiss AGLIC's Motion for Partial Summary Judgment without prejudice. The Court will also dismiss XL's Motion for Partial Summary Judgment without prejudice. The Court anticipates discussing the scheduling of a deadline for comprehensive summary judgment motions following the completion of all discovery in this matter. The Court's dismissal of the Pending Motions is without prejudice to either AGLIC or XL re-raising any issue raised in the Pending Motions in such a comprehensive motion. An appropriate Order of Court follows.

Case 1, ECF No. 249 at 6-9.

The parties in both Case 1 and Case 2 eventually notified the Court that discovery disputes had arisen in each of the cases. The parties subsequently agreed on coordination of Case 1 and Case 2 to allow for more efficient litigation of the parties' discovery disputes. Case 1, ECF No. 268; Case 2, ECF No. 92. The parties submitted proposed discovery deadlines, deadlines for briefing on discovery motions, and related procedures, and the Court entered orders providing for such deadlines and procedures. The parties subsequently filed twelve substantive motions (Case 1, ECF Nos. 272; 274; 276; 280; 283; 285; 287; and 290 and Case 2, ECF Nos. 98; 100; 103; and 107) and motions requesting oral argument on the pending motions (Case 1, ECF No. 315 and Case 2, ECF No. 123), in addition to voluminous briefing, exhibits, and various joinders. Given

the voluminous nature of the documents filed by the parties in each case, the Court eventually

granted Defendants'[8] request that the Court hold in abeyance all pretrial deadlines until the Court

addressed all of the pending discovery motions.

## II.    Legal Standard

With respect to discovery in a civil case generally, Federal Rule of Civil Procedure 26

provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.  Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  The information sought need not be admissible at trial so long as the

discovery request is reasonably calculated to lead to the discovery of admissible evidence.

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253

(1978).  As to limitations on discovery, Rule 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery
> otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can
> be obtained from some other source that is more convenient, less
> burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the
> information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

---

[8] Throughout the rest of this Memorandum Order, any reference to "Defendants" in the collective refers to all of the
Defendants in both Case 1 and Case 2, that is: AGLIC; XL; Discover; St. Paul; Liberty; Federal; and Great American.
The Court will refer to Discover; St. Paul; Liberty; Federal; and Great American as the "Case 2-Only Defendants."

Fed. R. Civ. P. 26(b)(2)(C).  "Although the federal courts have adopted liberal discovery rules, district courts, nevertheless, are empowered with 'broad discretion to manage discovery.'" *Thompson v. Glenmede Tr. Co.*, No. CIV. A. 92-5233, 1995 WL 752422, at *2 (E.D. Pa. Dec. 19, 1995) (quoting *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995).

Rule 26(c) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  With respect to motions for protective orders, the Third Circuit has explained that:

> Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).  "In determining whether 'good cause' exists for the issuance of a protective order, courts apply a balancing of interests standard."  *McCurdy v. Wedgewood Cap. Mgmt. Co.,* No. CIV. A. 97-4304, 1998 WL 964185, at *4 (E.D. Pa. Nov. 16, 1998).

After a party "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," that party may, "on notice to other parties and all affected persons," move for an order compelling disclosure or discovery.  Fed. R. Civ. P. 37(a)(1).  If a motion to compel is granted, subject to certain exceptions, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  If the motion is denied, the court may "issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant,

the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

## III.   Discussion

Initially, the Court notes that the issues before the Court have been extensively briefed, and the Court perceives that there is little value in oral argument on any of the motions at issue. Any argument that a party wished to assert should have been set forth in the numerous briefs (including arguably extraneous briefing on cross-motions), that have been filed in these matters. The Motions requesting oral argument will be denied.

Further, any request by any party for monetary sanctions related to any of the pending motions is hereby denied. In the rulings that follow, the Court will, to various degrees, grant in part and deny in part the relief sought by way of the motions pending before the Court. Following review of the pending motions, the Court believes, quite simply, that requiring each party to bear their own costs is likely the most efficient and, frankly, most equitable manner of apportioning costs. The Court will address each of the substantive motions in turn, grouping the motions in Case 1 and Case 2 where appropriate.

### A.   AGLIC and XL's Joint Motion to Compel (*Linn*) in Case 1 (ECF No. 280); Giant Eagle's Cross-Motion for a Protective Order (*Linn*) in Case 1 (ECF No. 283); Case 2-Only Defendants' Motion to Compel (*Linn*) in Case 2 (ECF No. 103); Giant Eagle's Cross-Motion for a Protective Order (*Linn*) in Case 2 (ECF No. 100)

#### 1.   *Linn*

Each of the motions addressed in this subsection deals with Giant Eagle's refusal to provide certain discovery based upon its reliance on the Third Circuit's decision in *Pacific Indemnity Co.*

18

*v. Linn*, 766 F.2d 754 (3d. Cir. 1985). Giant Eagle's motions for protective orders relying on *Linn* in each of the two cases are identical, as are its briefs in support (ECF Nos. 284 and 102) and replies (ECF Nos. 313 and 122), and the Defendants have filed a joint response to those motions (ECF Nos. 303 and 114). The Courts notes that the arguments raised by AGLIC and XL and the Case 2-Only Defendants[9] in their respective motions to compel information that has been withheld by Giant Eagle on the basis of *Linn* are also materially similar, and Giant Eagle has filed identical omnibus responses (ECF Nos. 302 and 113) to those motions. *See* ECF Nos. 302 and 113 (providing that these filings respond to ECF Nos. 280 and 281 in Case 1 and ECF Nos. 103, 104, 105, and 106 in Case 2). Accordingly, each of the four motions in this subsection can be effectively addressed together.

The relevant docket entries for the four motions addressed in this subsection are as follows:

- AGLIC and XL's Joint Motion to Compel (*Linn*) in Case 1 (ECF No. 280): ECF Nos. 281 (Brief in Support); ECF No. 292 (Corrected Exhibits); ECF No. 302 (Response in Opposition); ECF No. 309 (Reply).

- Giant Eagle's Cross-Motion for Protective Order (*Linn*) in Case 1 (ECF No. 283): ECF No. 284 (Brief in Support); ECF No. 303 (Response in Opposition); ECF No. 313 (Reply).

- Case 2-Only Defendants' Motion to Compel (*Linn*) in Case 2 (ECF No. 103): ECF No. 104 (Brief in Support); ECF No. 105 (AGLIC Joinder); ECF No. 106 (Liberty Joinder); ECF No. 113 (Response in Opposition); ECF No. 119 (Reply).

---

[9] AGLIC has joined the request for relief in the Motion to Compel at Case 2. *See* ECF No. 105. While Liberty is an original party to the Motion to Compel at Case 2, it has also filed its own brief (ECF No. 106).

- Giant Eagle's Cross-Motion for Protective Order (*Linn*) in Case 2 (ECF No. 100): ECF No. 102 (Brief in Support); ECF No. 114 (Response in Opposition); ECF No. 122 (Reply).

With respect to the discovery requests at issue in the discovery motions dealing with *Linn*'s applicability, AGLIC and XL's Motion to Compel seeks an order:

(1) compelling Giant Eagle to search for and produce documents responsive to Third Set of Requests for Production, Nos. 6, 8, 9, 10, 16, 17, and 18;

(2) compelling Giant Eagle to withdraw its relevance objections to, and search for and produce, documents responsive to First Set of Requests for Production, No. 10;

(3) compelling Giant Eagle to withdraw its relevance objections to, and supplement its answer to, First Set of Interrogatories, No. 8;

(4) compelling Giant Eagle to provide a witness or witnesses pursuant to Rule 30(b)(6) to testify on Topics 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, and 18 of AGLIC and XL's Rule 30(b)(6) Notice of Deposition;

(5) compelling Giant Eagle to present George Chunderlik and Joseph Millward for depositions;

(6) awarding AGLIC's and XL's reasonable expenses incurred in making this Motion, including attorney's fees, pursuant to Rule 37(a)(5).

ECF No. 280 at 1-2. *See also* ECF No. 281 at 9-10 ("AGLIC and XL seek discovery that is relevant only to Giant Eagle's assertions regarding the coverage issues in this case: whether damages in the Opioid Lawsuits are 'because of' bodily injury; whether any such bodily injury was caused by an 'occurrence,' let alone the number of any occurrences; whether any such bodily injury first manifested during the policy period of any Excess Policy and, if so, which one; when Giant Eagle first became aware of any purported bodily injury; and whether any exclusions barred coverage, including the exclusion for bodily injury 'expected or intended' by Giant Eagle.").

In its motions seeking protective orders, Giant Eagle makes clear that materially similar discovery requests are, or will be, at issue with respect to each Defendant in each of these two cases. Giant Eagle provides the following summary as to what those requests entail:

[E]verything produced in the Track 1 and 3 cases that were active (the "Active Opioids Cases") before Giant Eagle settled plus much more:

(1) All documents produced in the Active Opioids Cases;

(2) All documents involving Giant Eagle's distribution and dispensing of opioids for all locations – not just the Ohio only data produced in the Active Opioids Cases;

(3) All documents relating to Giant Eagle's revenue from the distribution and dispensing of opioids;

(4) All documents relating to Giant Eagle's efforts to comply with the Controlled Substances Act;

(5) All pleadings, expert reports, motions, affidavits, and orders served and/or filed in the ten settled cases and those still pending against Giant Eagle; and

(6) All Giant Eagle deposition transcripts.

. . . .

Insurers also focus their requested Rule 30(b)(6) testimony on issues that go to the heart of the liability claims against Giant Eagle in the settled Opioids MDL cases. No fewer than 42 of their Rule 30(b)(6) topics relate exclusively to key factual issues in the settled Opioids MDL cases. A few examples make this point clear:

(1) A witness knowledgeable about the "allegations in the Opioid Lawsuits" which includes all opioids related lawsuits brought against Giant Eagle – not just the settled cases;

(2) Giant Eagle's marketing, selling, and distribution of opioids with no time limitation;

(3) Any inquiry from any governmental agency that "relates to opioids or nonopioids marketed, sold, distributed or handled by Giant Eagle";

(4) Giant Eagle's anti-diversion efforts and suspicious order monitoring orders from 2006 to the present;

21

(5) All depositions of Giant Eagle witnesses in the Opioids MDL;

(6) Knowledge of all documents concerning opioid addiction, abuse, over-use, or diversion of opioids from 1996 to the present even though the broadest timeframe in the underlying Opioids MDL cases was 2005 to 2019;

(7) All expert reports served by any party in the settled cases;

(8) Knowledge of the 50 million documents produced in the settled cases;

(9) Knowledge of all documents relating to revenue earned from opioids dispensing and distribution without any timeframe limitation; and

(10) Knowledge of all documents concerning Giant Eagle's opioid orders, sales and transactions without geographic or time limitations.

. . . .

Leaving no stone unturned, AGLIC [also] seeks to depose Giant Eagle's co-lead counsel in the settled cases, Scott Livingston, regarding the merits of the claims asserted in the Opioids MDL cases against his client despite the undeniable adversity between AGLIC and Giant Eagle and the privilege and waiver issues such adversity raise in the requested deposition.  Relatedly, C1 Insurers seek to depose former Giant Eagle employees George Chunderlik and Joseph Millward even though they have no knowledge about Giant Eagle's insurance program.  Their knowledge is strictly limited to the underlying Opioids MDL cases wherein Mr. Chunderlik was deposed twice and Mr. Millward once.

ECF No. 284 at 5.  Giant Eagle has sought protective orders precluding Defendants from seeking this type of information on the basis that such information is only relevant to the merits of the underlying opioid MDL actions that Giant Eagle has settled and is thus not discoverable under the Third Circuit's decision in *Linn*.

By way of this Memorandum Order, the Court intends to provide some preliminary guidance respecting *Linn*'s potential applicability based upon its review of the relevant briefing and case law, while reserving a final ruling on the issue until a decision on the duty to defend has been rendered.  Accordingly, the Court will not compel Giant Eagle to produce a significant

portion of the discovery sought by way of the Defendants' Motions at this time. That said, the Court notes that it is encouraged by Giant Eagle's Reply (identical filings at ECF Nos. 312 and 121) to its Motions for Protective Orders (Non-*Linn* Argument) in Case 1 and Case 2 (ECF Nos. 285 and 107), wherein Giant Eagle provides the following:

> The consequence of some of these revisions is a meeting of the minds—with regard to expert reports and distribution data, the parties now appear to be aligned. However, Insurers' requests for patient dispensing data, all opposing party productions in the Opioids MDL, and Giant Eagle revenue data remain untenable.
>
> As explained in accompanying filings, *Linn* demonstrates why this information is irrelevant to the coverage issues being litigated here. Nevertheless, Giant Eagle has already made great efforts to produce what it can from the underlying MDL litigation—including much of the information sought in Insurers' Response. The remainder of Insurers' requests, however, create very real burdens for Giant Eagle, as both a party to the MDL and a covered entity under HIPAA. For this reason, the Court should issue an order protecting Giant Eagle from the Insurers' disproportionate and unreasonable discovery demands.

ECF No. 312 at 8. Given the "meeting of minds" between the parties and the representation that Giant Eagle has seemingly already produced much of the information sought in Insurers' Response, the Court notes that this Memorandum Order is in no way intended to prevent such agreed-upon exchanges of information, and the Court anticipates that the parties will follow through with their agreement and continue to meet and confer to resolve discovery disputes.

The Court notes that the issue of *Linn's* applicability in these matters will have a substantial impact on the scope of discovery, and each party has acknowledged the same during a discovery status conference. An insurer's duty to defend and its duty to indemnify are distinct obligations, with a more liberal standard applied by courts in determining whether an insurer owes a duty to defend. The United States Court of Appeals for the Third Circuit has explained:

> An insurer's duty to defend "is a distinct obligation" that is "different from and broader than the duty to indemnify." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 225 (3d Cir. 2005) (citations omitted). . . . Under Pennsylvania law, which is applicable on the insurance coverage issue, a court ascertaining whether an insurer

has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint. *Id.* at 226*; see also Gen. Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997). If the allegations of the underlying complaint potentially could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case. *Sikirica*, 416 F.3d at 226 (*citing Gen Accident Ins. Co. of Am.*, 692 A.2d at 1095).

*Ramara, Inc. v. Westfield Ins. Co.,* 814 F.3d 660, 673 (3d Cir. 2016). With respect to the duty to indemnify, the Third Circuit has explained:

> Unlike the duty to defend, the duty to indemnify requires a determination that the policy actually covered the claim at issue. *See Am. States Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56, 64 (Pa. Super. Ct. 1998) ("[A] duty to indemnify requires an inquiry into whether there was actual coverage for the underlying claim."). As a result, an insurer is "entitled to an opportunity to introduce evidence" that goes beyond the four-corners of the underlying tort complaint to "prov[e] the applicability of [a] subject [policy] exclusion" in the coverage action. *Regis Ins. Co. v. All American Rathskeller, Inc.*, 976 A.2d 1157, 1161 (Pa. Super. Ct. 2009).

*Liberty Mut. Ins. Co. v. Penn Nat'l Mut. Cas. Ins. Co.*, No. 20-3468, 2021 WL 5401543, at *4 (3d Cir. Nov. 18, 2021); *see also TIG Ins. Co. v. Nobel Learning Communities, Inc.*, No. CIV.A. 01-4708, 2002 WL 1340332, at *6 (E.D. Pa. June 18, 2002) ("While an insurer must defend its insured if the complaint alleges conduct that *potentially* falls within the scope of the policy, it must indemnify its insured only if liability is found for conduct that *actually* falls within the scope of the policy." (quoting *Winner Intern. Corp. v. Continental Cas. Co.*, 889 F. Supp. 809 (W.D. Pa. 1994))).

In *Linn*, the Third Circuit identified a very specific scenario wherein the duty to indemnify must be decided under the same standard as the duty to defend. In doing so, the Third Circuit explained:

> This court has recognized that obligations to defend are wider than obligations to indemnify. *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir.1981). From this, Pacific contends that the wider defense obligation cannot form the basis for the duty to indemnify. Although this is true in

> any case in which sufficient facts are established confining the claim to a recovery
> not within the scope of the policy, the settlements in the underlying suits here
> preclude such factual determinations.  As the district court noted, the duty to defend
> carries with it the conditional obligation to indemnify until it becomes clear that
> there can be no recovery within the insuring clause.  *See* app. at 472.  To reach the
> opposite conclusion could result conceivably in an insured never being indemnified
> in a suit that its insurer settles where that insurer defends under a reservation of
> rights.  In such a situation, it would behoove the insurer to reserve its rights and to
> settle the suit to avoid both the costs of litigation and, at the same time, the costs of
> indemnification.  Such a strategy should not be countenanced.  We are persuaded
> that the approach adopted by the district court cannot be faulted because it is
> justified by both rational and pragmatic considerations.

*Linn*, 766 F.2d at 766; *see also id.* (citing favorably the district court's holding that, for settled underlying suits, "the duty to indemnify necessarily had to follow the duty to defend because settlement made it impossible to determine on what theories of liability, if any, the underlying claimants would have prevailed.").

In discussing the Third Circuit's holding in *Linn*, the Honorable Mark R. Hornak of this District has explained:

> But most recently, our Court of Appeals has acknowledged the current vitality of
> its *Linn* decision, along with the essential principle that led that court to affirm the
> district court in *Linn*: where there are multiple claims involving multiple parties
> coupled with a global settlement in an underlying lawsuit, and the defendant
> insurance carrier in the "follow along" indemnity litigation had by its actions opted
> out of defending the underlying lawsuit even under a reservation of rights, and there
> are no factual findings in the underlying lawsuit to consider in determining whether
> that insurance carrier had any indemnification duty, "the duty to indemnify must
> follow the duty to defend."  *SAPA Extrusions, Inc. v. Liberty Mutual Ins. Co.*, 939
> F. 3d 243, 250, n. 3 (3d Cir. 2019) (quoting *Linn*, 590 F. Supp. at 650 (E.D. Pa.
> 1984)).  In this Court's estimation, this is not a "blanket rule" by any measure but
> is instead quite focused, and means that the Third Circuit's precedential *Linn*
> decision remains good, and applicable, Circuit law.
>
> Thus, it appears to the Court that the two prerequisites for indemnification under
> the "*Linn* Rule" are: (1) that the nature of the case as being one with multiple
> parties, multiple theories of liability, and settlement making liability among
> competing parties impossible to determine and (2) there must be a concern that an
> insurer could foreclose indemnification by its conduct relative to the underlying
> lawsuit.  When those factors converge, the indemnity obligation follows the duty
> to defend.

*Liberty Mut. Ins. Co. v. Penn Nat'l Mut. Cas. Ins. Co.*, 499 F. Supp. 3d 130, 141–42 (W.D. Pa. 2020*), aff'd*, No. 20-3468, 2021 WL 5401543 (3d Cir. Nov. 18, 2021); *see also id.* at 142 ("[A]n insurer who breaches its obligation to defend is estopped from arguing that the settlement represented claims outside those covered under the policy because an insurer 'cannot stand aside while the underlying case proceeds and only after it is settled seek to dissect it.'" (quoting *TIG Ins. Co. v. Nobel Learning Communities, Inc.*, No. CIV.A. 01-4708, 2002 WL 1340332, at *17 (E.D. Pa. June 18, 2002)).

> With respect to *Linn*'s applicability in these cases, AGLIC and XL argue:

> In sum, *Linn* provides a narrow exception to the factual inquiry required to determine a duty to indemnify. The limited circumstances in which the exception may apply are not present here because: (1) Giant Eagle has not settled certain Opioid Lawsuits for which it seeks coverage; (2) Giant Eagle's settlement does not make it impossible to determine liability among competing parties; (3) the requested discovery is not directed to factual issues that would have been decided in the settled Opioid Lawsuits; and (4) AGLIC and XL did not settle the cases or breach a duty to defend.

ECF No. 281 at 6. Giant Eagle argues that Defendants misinterpret *Linn*, and that they have modified the Third Circuit's holding to provide: "(1) *Linn* only applies if the insurer, rather than the insured, settles the underlying lawsuits; (2) *Linn* only applies if there are multiple insurers providing different types of insurance; and (3) *Linn* requires a pre-existing finding in favor of the insured on duty to defend." ECF No. 302 at 3. In moving for a protective order, Giant Eagle argues:

> "[B]oth rational and pragmatic considerations" – including the insurmountable difficulty of trying the underlying action in the coverage action without the Opioids MDL plaintiffs – fully justify the *Linn* rule. If there were ever insurance litigation that the *Linn* rule was intended for, it is these twin coverage cases given the enormity and complexity of the ten Opioids MDL cases that Giant Eagle settled.

ECF No. 284 at 2.

As Defendants argue, and Giant Eagle concedes, *Linn* is not a discovery doctrine, but rather speaks to the manner in which the duty to indemnify is determined in a very specific scenario. A decision on the applicability of *Linn* would seemingly be more appropriate in the context of a Rule 56 motion as opposed to in the context of a typical, run-of-the-mill discovery dispute. That said, Rule 26 limits discovery to information that is *relevant* to any party's claim or defense and *proportional* to the needs of the case, and the Court understands why Giant Eagle would prefer to not engage in costly discovery into the merits of underlying lawsuits that it has settled. If *Linn* ultimately applies as Giant Eagle asserts, the four corners of the underlying complaints and the four corners of the relevant insurance policies are all that the Court would look to in determining both the duty to defend and the duty to indemnify, and any attempt by the Defendants to litigate the underlying action would be fruitless. *See Lexington Ins. Co. v. Charter Oak Fire Ins. Co.*, 81 A.3d 903, 910–11 (Pa. Super. 2013) ("As long as the complaint might or might not fall within the policy's coverage, the insurance company is obliged to defend. Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend. The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint."). Accordingly, if *Linn* applies, discovery into the merits of the settled opioid lawsuits could prove both irrelevant and disproportionate.

While the parties make much of the potential consequences of the Court's decision on their discovery motions, the Court notes that, because *Linn* is not a discovery doctrine, the Court need not definitively decide the *Linn* issue at this time. While withholding certain discovery from the Defendants until after summary judgment motions on the duty to defend are decided would surely prolong the above-captioned actions, and while requiring Giant Eagle to respond to Defendants'

requests would certainly result in costs, neither scenario would prevent this Court from eventually determining the applicability of *Linn* at the summary judgment stage and subsequently reopening discovery if *Linn* does not apply or, alternatively, barring the introduction of evidence outside of the four corners of the policies and the relevant underlying complaints and shifting costs if *Linn* does apply.  Given the same, the Court is hesitant to make a final determination on the issue in the context of discovery motions.  *See Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 511 (D. Nev. 2020) (rejecting a plaintiffs' attempt "to define the bounds of appropriate discovery by challenging the merits of existing claims or defenses in briefing discovery motions.").

That said, and as already noted, the Court is acutely aware that the discovery at issue could result in much expense and delay, and that, while not ideal, the failure to allow for the discovery at this juncture could be remedied post-summary judgment by the reopening of discovery.  The parties are also aware that litigating these cases in a piecemeal fashion is not the Court's preference, and, if a ruling can avoid the same, it may be worth the Court's effort to provide guidance where appropriate.  Finally, it also bears noting that, while merits-based, the Court believes that the issue of *Linn's* applicability is primarily a legal one, with discovery unlikely to provide much more information of value in terms of *Linn's* applicability.  Finally, the Court has no intention, by way of this Memorandum Order, of addressing the issue of whether Defendants owe a duty to defend in this matter, but rather only whether the same analysis typically reserved for the duty to defend (i.e., the four corners rule) should also apply to the duty to indemnify for the settled actions.

Turning to the parties' arguments, the Court notes that Giant Eagle has settled ten of the MDL lawsuits at issue in these matters.  ECF No. 284 at 3.  Accordingly, at least as alleged in the operative Complaints, at least four lawsuits remain pending against Giant Eagle in the opioid

MDL, including the NAS lawsuits and at least one lawsuit similar to the County lawsuits.  *See* ECF No. 233 at ¶ 24; ECF No. 1 at ¶ 29; *but see* ECF No. 284 at 5 ("Though relatively inactive, there are seven [total] opioids-related actions still pending against Giant Eagle.").  It bears noting that the operative Complaint in each action contains an identical assertion respecting the similarity of each of the opioid MDL cases: "The MDL Lawsuits allege substantively identical facts and assert substantively identical causes of action against HBC with respect to its alleged distribution of prescription opioids."  ECF No. 233 at ¶ 26; ECF No. 1 at ¶ 31.  It further bears noting that Giant Eagle seeks declaratory relief with respect to what it defines as the "Opioid Lawsuits," which includes more cases than just the MDL lawsuits.  *See* ECF No. 233 at ¶ 25; ECF No. 1 at ¶ 29 ("The twenty-four lawsuits identified above, as well as any additional lawsuits filed or to be filed against Giant Eagle asserting allegations similar to the actions specifically identified above, are collectively referred to herein as the 'Opioid Lawsuits.'"); *see also id.* (Giant Eagle's Prayers for Relief request declaratory judgment respecting Defendants' duties to defend and indemnify Giant Eagle against *the Opioid Lawsuits*, including but not limited to the MDL settlement, as well as any future lawsuits alleging the same or similar claims).

Discovery was complete in four of the settled MDL lawsuits, and discovery had not yet begun in six of the settled lawsuits.  ECF No. 284 at 3.  With respect to the potential burden imposed by the discovery Defendants seek from Giant Eagle, Giant Eagle avers:

> Giant Eagle must entirely redo its production of dispensing data for nearly ten million opioid prescriptions filled by Giant Eagle in Ohio during the relevant Track 3 case timeframe (2006-2018) and, because that is not enough, produce an even greater amount of dispensing data for opioid prescriptions filled outside of Ohio and far beyond the original 20-year timeframe.

ECF No. 284 at 4.  Giant Eagle asserts that it "does not oppose discovery focused on purely insurance-related issues that would never have been litigated in the underlying settled actions, but

most of the discovery the Insurers request relates to the core issues that necessarily would have been litigated in those actions." *Id.* at 2.

The Court quotes the entirety of the following analysis from *Chief* Judge Hornak's Opinion in *Liberty Mutual*, as it is exceptionally instructive with respect to Linn:

> Distilled down, here is what the record reveals happened here. There was a tragic death of a workman whose claims as pleaded would have likely created a sympathetic plaintiff's case at the trial of the Underlying Action. That was where that case was headed until it settled. With regard to that Underlying Action, Cost demanded that Penn National defend Cost's interests in the Underlying Action. Penn National instead went on "radio silence," first ignoring that defense demand altogether, and then declining to defend Cost throughout the mediation process that settled the Underlying Action. Penn National nonetheless participated in that settlement process on behalf of Flexicore, right alongside of Cost (whose interests were represented by Liberty Mutual, its own insurer, in light of Penn National's cold shoulder). While Penn National was ignoring its duty to defend Cost, it also bypassed the opportunity to advocate for "no liability" on the part of Flexicore or Cost at a time in which all of the Defendants in the Underlying Action faced the risk of both liability and a substantial damages verdict on one or more of the numerous counts asserted in the Underlying Action in a trial. So, to end its risk, Cost (via Liberty Mutual) fronted the money necessary to settle the death claim (and avoided the risk of a significant verdict at trial for the death of a jobsite worker) with no help from Penn National.
>
> With the Underlying Action resolved as to all defendants, and after bypassing the opportunity (or in this case, duty) to defend Cost in the Underlying Action, Penn National only now wants to litigate *that* case in *this* case, specifically whether Flexicore could have been on the liability hook had that Underlying Action gone to trial in such a way as to require coverage of Cost as an "additional insured" under the Policy, and thus would become a trial as to whether and what Penn National's obligation would have been to Cost. This is exactly the sort of *post-hoc* "dissection" of the Underlying Action that the Courts in *TIG Insurance* and *LaHoda* rejected.
>
> But also consider the advantage that Penn National has gained from its own choices and resulting actions. First, Cost was forced to extricate itself from the Underlying Action or face the risk of a substantial verdict in a situation in which Penn National had accomplished an exit strategy for its primary insured, Flexicore, and with every signal from Penn National being that they would not respond to any liability verdict against Cost. Then, with Cost (via Liberty Mutual) having fronted the funds necessary for the settlement of those claims, Penn National would now require Liberty Mutual (standing in Cost's shoes) to take *this* case to trial to essentially prove the fact and amount of liability *against Cost and Flexicore* as to the claims

in the Underlying Action if it wanted indemnity, but in a fundamentally different environment than that which would have existed had the Underlying Action gone to trial (a jury trial involving the claims of the family of a deceased construction worker, as opposed to a damages bench trial between two insurance carriers in this Court). In substance, Penn National's refusal to defend and participate on behalf of Cost set up a "hostage situation" for the benefit of Penn National by forcing Cost to make settlement decisions while facing the risks attendant to that jury trial, all while Penn National was actually present and participating in the settlement talks for Flexicore, and with Penn National reserving the "fight" about actual liability to the Gonzalez estate, and hence its coverage obligations to Cost, for a later bench trial.

Effectively, by its conduct, Penn National took just about every step it could to put Cost in the unfavorable and essentially untenable position of risking trial or settling the underlying action (which Cost, through Liberty Mutual, did elect to settle) and then avoided its own potential duty to indemnify by first remaining silent for years, then refusing to defend Cost in the Underlying Action, sticking with its denial of coverage through the settlement of the Underlying Action, ECF No. 80 at 33, and finally holding out until it had to be sued by Liberty Mutual here. And now Penn National wants to force a trial on the facts of the Underlying Action, one in which Cost would have to prove that it and Flexicore were liable to the Gonzalez estate in the Underlying Action to recover indemnity, and when the genesis of that Underlying Action was Mr. Gonzales' death, which occurred nearly ten years ago.

This is the type of concern our Court of Appeals said was one focus of the holding in *Linn*, namely "the concern that an insurer would be able to settle a suit without an agreement with the insured and attempt to avoid its duty to indemnify by claiming a jury would have found the claims in the underlying suit were not covered by the policy." [*12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1167 (3d Cir. 1996)]. In these somewhat different circumstances, even though Cost and Liberty Mutual elected to settle the claims against Cost in the underlying action, they were for the reasons noted nonetheless exposed to the same type follow-along litigation risks that animated the analysis in *Linn*, since by its inactions (failure to respond or defend) and then actions (settling the Underlying Action as to Flexicore), Penn National eliminated any ability to sort out in the Underlying Action who would have been found liable (including as to Flexicore and Cost) and to what degree, and then flowing from those conclusions, the degree to which there were any potential indemnity coverage issues. Since the global settlement of the Underlying Action resolved all claims and defenses in that case, in this Court's judgment, the principles of *Linn* foreclose the Defendant from now forcing the Plaintiff to now try the Underlying Actions in the forum of this case.

The Court concludes that the second element of the *Linn* Rule outlined above is satisfied in that Penn National settled the case for its insured, Flexicore, but without its additional insured, Cost, and now seeks to foreclose indemnification and relitigate both the liability issues from the Underlying Action, and any coverage

defenses, here.  In this Court's estimation, such is contrary to the guidance from *Linn*.

Additionally, that the death of the worker litigated in the Underlying Action would be the type of injury which the Policy would cover is without doubt.  (*See e.g.*, ECF No. 64-2, at 105 ("liability for 'bodily injury' … caused, in whole or in part, by … [y]our acts or omissions").)  And in its "duty to defend" Opinion, the Court set out the provisions of the Policy that provided coverage to Cost on the Penn National Policy, so that if Flexicore were tagged with liability in the Underlying Action, the policy would have covered that claim and any liability that Cost would have also had as an additional insured.   There were multiple claims involved in the Underlying Action against multiple defendants (ECF No. 1-2 (twelve (12) counts against six (6) defendants)), triggering the first element of the *Linn* Rule, whereby the duty to indemnify follows the duty to defend where there are multiple claims, multiple parties, multiple insurers, and a settlement in the Underlying Action that precludes a determination on the facts of that case relative to liability and its apportionment.   In theory, it would be literally possible to assess Flexicore and Cost's underlying liability to the plaintiff in the Underlying Action *post hoc* by "trying" the Underlying Action as part and parcel of this case.  But that is really an illusory concept, because by its decisions and conduct, Penn National has entirely and irrevocably altered the context for those decisions by dodging the risk of any of that being decided by the jury in the crucible of the litigation of the Underlying Action with all of the claims and defenses on the table, and then in essence swapping out the jury factfinder for this Court.  How the questions of liability of and between the defendants in the Underlying Action would have been resolved in that jury trial cannot not now be captured with any accuracy in the context of an after-the-fact declaratory judgment non-jury trial in this Court.  But those are the questions that Penn National now says must be resolved to determine whether it had any indemnity duty at all.  In this Court's estimation, the second prong of *Linn* tells us that "now" is simply too late.

In hedging its bets by giving Cost the silent treatment in terms of a defense and then its participation on Flexicore's behalf in the settlement talks that resolved the Underlying Action, Penn National also avoided an obligation to ameliorate the risk that Cost faced in that case.  In those circumstances, Penn National, consistent with *Linn*, should be and will be estopped to now challenge the necessity for and amount of the settlement for a death claim otherwise of the type covered by the Policies that Cost entered into in the Underlying Action.  To hold otherwise would reward the inequitable conduct Penn National engaged in here.  Therefore, because *Linn's* principles lead to that result, and because *Linn* remains sound law in this Circuit, this Court will apply those principles in this case and enter summary judgment in favor of Liberty Mutual.

*Liberty Mut.*, 499 F. Supp. 3d at 142–46.

In describing its holding in *Linn*, the Third Circuit has explained:

In *Linn* we held that the duty to indemnify followed the duty to defend where settlement of an underlying action involving multiple theories of liability and several competing insurers made it impossible to determine which of the multiple insurers had a duty to indemnify. *Linn*, 766 F.2d at 766. However, unlike *Linn*, this case involves only one insurer and liability is based on a single theory. There is nothing to indicate that in this case settlement made it impossible to determine whether coverage under the Policy was warranted. *Linn* is therefore inapposite. *See, e.g., 12th Street Gym, Inc. v. Gen. Star Indemn. Co.*, 93 F.3d 1158, 1167 (3d Cir.1996) (distinguishing *Linn* where the insured participated in the settlement of the underlying case).

Moreover, Pennsylvania courts have explicitly rejected Donnelly's expansive reading of *Linn*, and explained that there is no blanket rule giving rise to a duty to indemnify where the insured settles the underlying action. *See, e.g., Regis Ins. Co. v. All Am. Rathskeller, Inc.*, 976 A.2d 1157, 1161 n. 8 (Pa.Super.Ct.2009). To the contrary, Pennsylvania courts have made clear that the very purpose of filing a declaratory action in an insurance dispute such as this is to determine whether a duty to indemnify exists in the first place. *Id.* at 1161. In this case, because we hold that American Western does not have a duty to defend Donnelly in connection with the Underlying Action, it follows that American Western does not have a duty to indemnify Donnelly for any amount due pursuant to the settlement of the Underlying Action.

*Am. W. Home Ins. Co. v. Donnelly Distribution, Inc.*, 523 F. App'x 871, 874–75 (3d Cir. 2013).

There is no question that the Defendants took no part in the underlying lawsuits that Giant Eagle has now settled on its own, and has not joined in the defense of the remaining cases now that a settlement has been paid. Giant Eagle argues that, under *Linn*, the issue of whether the plaintiffs in the settled underlying actions would have proven successful on any or all of their claims if the cases had gone to trial, i.e., the merits of the underlying actions, is now irrelevant in the actions before this Court. According to Giant Eagle, the only proper forum for determining whether Giant Eagle would have been liable for the claims set forth in the underlying lawsuits was in the underlying lawsuits themselves. *See id.*; *see also Linn*, 766 F.2d at 762.

The question then becomes, what, if any, discovery into the underlying lawsuits could be appropriate in the context of this coverage action. The Court tends to agree with Giant Eagle that the Defendants in the cases before this Court have couched their arguments in insurance contract

jargon in an attempt to make it appear that certain of their discovery requests are completely unrelated to merits of the underlying opioid lawsuits. For example, it seems clear to this Court that the plaintiffs in the underlying actions would have had to prove "bodily injury" to succeed on their claims.

Defendants' argument that many cases applying *Linn* involved different types of insurance being implicated in the underlying action is well-taken, but is ultimately, at least in this Court's estimation at this juncture, a red herring. The Court tends to agree with the following argument raised by Giant Eagle in opposition to Defendants' position:

> This example further illustrates another flaw in Insurers' position. Insurers argue that the *Linn* rule is limited to settlements that make it impossible to determine liability between competing lines of insurance coverage. Not so. *Linn* also operates when the settlement makes it impossible to determine which *theories* of liability, if any, would have prevailed against the insured. This is so because, in many circumstances, the operative insurance policy would cover liabilities based on some theories, but not others. Because settlement makes it impossible to look to a verdict, *Linn* provides a resolution. The Opioids MDL plaintiffs alleged that Giant Eagle "knew or should have known" that its pharmacies were dispensing red flag prescriptions likely to result in diversion and abuse. *See* LCAC, 1:17-md-02804, ECF No. 3327, at ¶ 410. These are two separate theories of liability; one based on intentional conduct (knew), and one based on negligent conduct (should have known), with different insurance coverage implications. Giant Eagle disputes both theories. But the settlement precluded a determination of any wrongful conduct by Giant Eagle, much less whether it was either negligent or intentional. And re-trying these issues, including written discovery, multiple fact and expert depositions, and trial testimony focused on this massive data set, is exactly what *Linn* is designed to avoid.

ECF No. 302 at 9. It strikes the Court that what *Linn* seeks to avoid is discovery into the merits of a complex underlying action that has been settled by an insurer defending under a reservation of rights or by an insured in the absence of an insurer (who is ultimately determined to have owed a duty to defend) so as to avoid a trial in a declaratory judgment action of the underlying settled

case.[10]  Any argument that this Court should consider, and *resolve*, the merits of any of the underlying settled cases in determining the duty to indemnify further strikes the Court as contrary to *Linn*.

Having said all of the above, and while the Court appreciates the parties' efforts to frontload the *Linn* issue, the Court believes that a final decision on the issue is neither necessary nor warranted at this time.  This is simply the latest in the parties' efforts to move this case at a pace that simply is not sustainable given the number of often complicated and disputed legal and factual issues, involving numerous underlying lawsuits, multiple relevant timeframes, and layers of insurance at issue.  As acknowledged by all parties, *Linn* is not a discovery doctrine, and neither party cites to a case where a court utilizes *Linn* in a discovery context.  The parties have essentially moved for summary judgment on the issue.  Neither party properly invokes *Linn* at this juncture, as Defendants seek voluminous discovery that would be precluded by *Linn* if it does apply, and Giant Eagle seeks a protective order effectively holding that *Linn* unequivocally applies.  Any such discovery shall be addressed during a second phase of discovery, if necessary, following summary judgment motions on the duty to defend.

There are several bases justifying this Court's decision to not resolve *Linn*'s applicability in the context of a discovery motion.  First, and again, *Linn* is not a discovery doctrine, and neither side cites to a case where the applicability of *Linn* was resolved in the course of ruling on the proper scope of discovery.

---

[10] The Court does note Case 2-Only Defendants' argument that certain of their policies may not even provide for a defense in the first instance, as certain Case 2-Only Defendants assert that their policies are indemnity-only insurance agreements.  The Court further notes that it has held that the payment of defense costs cannot trigger the duty to defend under the XL Policy or AGLIC Policy, and that AGLIC and XL argue that they had no duty to defend at the time Giant Eagle settled.  This would, at least seemingly, remove what the Court views as an essential element of *Liberty Mutual*'s rationale, that is, the abandonment of the insured by an insurer who owes a contemporaneous duty to defend. The Court perceives a decision on *Linn*'s applicability before deciding the duty to defend to be premature, and the Court anticipates addressing this issue more fulsomely if and when necessary, and further expects that the parties will be prepared to address the same at the appropriate juncture.

Second, and more importantly, *Linn* speaks to the issue of indemnity.  In this Court's estimation, a ruling on the applicability of *Linn* at this juncture puts the cart before the horse, as there are several disputed issues that could result in the Court never considering *Linn*'s applicability in the first place.  One of those is an issue that Giant Eagle attempted, prematurely, to frontload in the first instance, the duty to defend.  Defendants have consistently asserted that they owe no duty to defend, arguing that the claims in the underlying actions are not potentially covered in the first instance, challenging whether any duty to defend has been triggered, and asserting that the Court's prior decision on the duty to defend, which it abandoned on reconsideration, relied on case law that has since been overturned on appeal.  If Defendants are correct that there is no duty to defend, there can be no duty to indemnify.  *See Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*, No. 22-2565, 2023 WL 6172886, at *1 (3d Cir. Sept. 22, 2023) ("The District Court held National had to defend both entities and later concluded it also had to indemnify them.  We disagree with the first conclusion, which dooms the second as well.").  Giant Eagle does not disagree.  *See* ECF No. 267 at 18:7-13 (counsel asserting "[a]nd we agree that at the end of the day we win or lose on whether ultimately when you look at the Four -- when you apply the Four Corners Rule and you look at the complaints and you look at the policy language, if you find that not even one count in one case is potentially covered, *then we lose; case over*.  It applies both ways[,]" and further suggesting "[s]o we figured, well, *let's get through discovery with respect to issues that are truly related to the insurance issues as opposed to the actual issues relating to the underlying trial; and we'll file for summary judgment*" on the duty to defend (emphasis added)).[11]

---

[11] As has been made clear in this Memorandum Order, the Court finds this suggestion by counsel to be entirely sensible.

A determination as to what standard applies to the duty to indemnify, quite simply, might ultimately prove entirely unnecessary in this matter.  A final ruling on *Linn*'s applicability in the context of a discovery motion, which both parties acknowledge would be a first, strikes the Court as unwise in that it is both premature and could provide for unnecessary, and potentially confusing, dicta.

In light of the same, the Court will grant Giant Eagle's request for a protective order only to the extent that any discovery into the underlying settled actions will be stayed at this time.  The parties shall continue to conduct discovery respecting the duty to defend (and any other discovery directed by way of this Memorandum Order), and the Court will then permit the filing of motions for summary judgment on that issue.  If the issue resolves entirely in Defendants' favor, there is potential that no discovery into the duty to indemnify would be necessary.  If it does not, the Court can revisit the issue of *Linn's* applicability at that time with additional briefing from the parties with the benefit of the Court's preliminary thoughts laid out herein.

At this time, the Court again acknowledges its entry of a prior Memorandum Opinion providing that it believed "that consideration of all relevant issues following the completion of discovery is the most efficient use of both the Court's and the parties' time, and that the same will avoid inefficient, piecemeal adjudication in this matter."  ECF No. 249 at 8.  The Court believes that its decision to defer ruling on the applicability of *Linn* is consistent with that holding.  As noted, discovery into the underlying actions will inevitably be extensive and costly, and, perhaps more importantly, could prove unnecessary.  While a second phase of discovery certainly would extend this matter and, arguably, result in piecemeal litigation, the Court believes that the resources that could, at least potentially, be saved from staying discovery into the merits of the settled underlying actions warrant the same.  The Court defers a ruling on the issue of *Linn*'s applicability

at this time, and stays any discovery into any subject that might constitute "the merits" of the underlying actions until after motions for summary judgment on the issue of the duty to defend have been decided.

While the Court has provided some guidance and preliminary thoughts on *Linn*'s applicability to this case, neither side should be beguiled into believing that any of the Court's analysis respecting *Linn* is final.  If the Court finds that a duty to defend exists, the parties will be invited to submit supplemental briefing addressing *Linn*, and the Court will look at the issue with fresh eyes at that juncture.

### 2.  Other Grounds for Withholding Discovery Asserted by Giant Eagle

Giant Eagle also asserts that HIPAA barriers, protective order confidentiality, undue burden, and proportionality should preclude discovery into the underlying settled actions sought by AGLIC and XL.  ECF No. 302 at 2.  These issues are more fully explored by the parties in the context of Giant Eagle's Motions for Protective Orders (Non-*Linn* Argument) in Case 1 and Case 2 (ECF Nos. 285 and 107, respectively), which are brought in the alternative to the Motions at issue in this subsection.  The Court will briefly address Giant Eagle's Motions for Protective Orders (Non-*Linn* Argument), which the Court finds to be premature in light of the holdings herein, below.

### B.  Giant Eagle's Motions for Protective Orders (Non-*Linn* Argument) in Case 1 and Case 2 (ECF Nos. 285 and 107)

Giant Eagle has filed identical motions for protective orders asserting non-*Linn* bases for withholding the discovery that it has withheld on the basis of *Linn*, as well as identical briefs in support (ECF Nos. 286 and 108) and replies (ECF Nos. 312 and 121) in each of the cases.  The Defendants have filed a joint response to those motions (ECF Nos. 304 and 115).  Given that the

filings at each docket are identical, Giant Eagle's Motions for Protective Orders as to non-*Linn* issues can clearly be resolved in tandem.

By way of its Motions for Protective Orders, Giant Eagle seeks an order protecting it from being required to produce: (1) Protected Health Information ("PHI") and other information subject to the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); and (2) documents and data sets produced by plaintiffs, defendants other than Giant Eagle, and non-parties in the Opioid MDL that are maintained on the Opioid MDL joint defense database.  Mot. 1-2, ECF No. 285.  These Motions have been brought in the alternative to Giant Eagle's Motion seeking the application of *Linn*, as Giant Eagle avers that the discovery at issue in the Motions at issue in this subsection "will be irrelevant if the Court follows the Third Circuit's precedent and properly limits the scope of this coverage matter to the insurance issues at hand."  Br. in Supp. 2, ECF No. 286. Giant Eagle states that, "if the Court decides not to apply *Linn*, Giant Eagle requests an order protecting it from unduly burdensome, disproportionate, and expensive discovery that involves confidential documents and protected health information."  *Id.*

Given the Court's decision to defer a final ruling on *Linn*'s applicability, a decision on alternative bases to withhold this information would be premature and potentially unnecessary. The Court defers ruling on the additional bases for withholding patient dispensing data, all opposing party productions in the Opioids MDL, and Giant Eagle revenue data until such time as the Court takes up the *Linn* issue, should the same become necessary following summary judgment motions on the duty to defend.

### C. XL's Motion for Protective Order Barring Discovery of Other XL Specialty Policyholder Information and Policyholder Information of Other XL-Affiliated Issuing Companies (ECF No. 272) in Case 1

The relevant briefing for XL's Motion for Protective Order is located at ECF Nos. 273, 295, and 305.  XL's Motion for Protective Order seeks a protective order barring discovery of

information related to other XL policyholders and policyholders of other XL-affiliated issuing companies.[12] Giant Eagle has propounded several requests, including an interrogatory, a request for production, and a 30(b)(6) notice seeking information respecting XL's handling of opioid-related claims submitted by other non-party XL policyholders that are not affiliated with Giant Eagle, including information regarding XL's investigation into and evaluation of any such claims, whether XL approved or denied such claims, and whether it provided a defense to the insured. Mot. ¶¶ 1-2, ECF No. 272. XL argues that such information is not relevant to the issues presented in this case and would not lead to the discovery of admissible evidence, and, accordingly, further argues that any discovery into these issues would prove excessively burdensome on XL and non-party XL-affiliated issuing companies with no actual benefit to Giant Eagle. *Id*.

With respect to relevance, XL argues more specifically that a determination as to whether Giant Eagle is entitled to insurance under its policies with XL will involve only consideration of the facts related to the underlying opioid claims for which Giant Eagle seeks coverage and the specific terms, conditions, and exclusions provided in the XL policies. Br. in Supp. 3, ECF No. 273. It argues that the manner in which "XL and other XL-Affiliated Issuing Companies handle other opioid claims against other insureds under different insurance policies issued to those insureds is plainly irrelevant to whether Giant Eagle is entitled to coverage." *Id*.[13] XL further argues that:

---

[12] With respect to these "XL-affiliated issuing companies," XL explains:

> Giant Eagle's Requests defined "XL Specialty" as including all XL companies ("XL Specialty means XL Specialty Insurance Company and any of its present or former parents, subsidiaries, affiliates, agents, members, managers, representatives, counsel, officers, directors or employees.") and it defined "you" as follows: "The terms you and your means XL Specialty."

Br. in Supp. 2, ECF No. 273 (emphasis omitted).

[13] In opposing a similar discovery request, the Case 2-Only Defendants similarly argue:

The Opioid MDL consists of thousands of lawsuits filed by thousands of different underlying plaintiffs, including cities, counties, tribal authorities, and individuals across the country alleging different injuries.  The various underlying plaintiffs' claims and allegations in over 3,000 lawsuits are not uniform; they differ from case to case and with respect to different defendants, such as manufacturers, distributers, and dispensers.

ECF No. 305 at 5.

With respect to proportionality, XL argues that "the scope of the files and the information contained therein remains voluminous such that identification, review, and production of responsive materials, as well as requiring XL Specialty and other XL-Affiliated Issuing Companies to prepare numerous witnesses on this topic, would impose an undue burden on XL Specialty and other XL-Affiliated Issuing Companies disproportional to the needs of this particular case." *Id.* at 7.  XL further cites to non-party policyholders' confidentiality and legal privilege and work product doctrine interests in opposing such discovery.  Mot. at ¶ 4, ECF No. 273.  XL has also joined and adopted the arguments advanced by AGLIC respecting "other insured' discovery set forth in AGLIC's Brief in Opposition (ECF No. 298) to Giant Eagle's Motion to Compel (ECF No. 274).  *See* ECF No. 300.

---

An insurer's position as to other policies involving other policyholders on other claims is irrelevant, since those other positions generally depend, among other things, upon variations in applicable policy language, the insured's conduct giving rise to claims, the claim submission facts, and the laws of the relevant jurisdictions, among myriad other factors.  The issues in this case involve whether Giant Eagle is entitled to coverage under the specific terms, conditions, and exclusions of the specific policies at issue based on the specific facts of Giant Eagle's claim, and the specific underlying allegations for which Giant Eagle seeks coverage.

Consequently, in order for the discovery that Giant Eagle seeks to have any bearing on the issues in this case, the Court would need to hold scores of mini-trials for each other-insured claim that Giant Eagle seeks to submit as evidence to assess whether, among other issues, the underlying claims arose out of substantially similar facts, whether notice was timely given, whether the policy language was materially identical, and whether the applicable law governing the policies was analogous.

Case 2 ECF No. 116 at 4.  XL, AGLIC, and the Case 2-Only Defendants advance materially similar arguments to one another, and the Court's resolution of XL's Motion for Protective Order will largely, if not entirely (the Court notes that a distinction between the two cases is that there have been no assertions of bad faith in Case 2), dictate the results on Giant Eagle's Motion to Compel other insured discovery from all Defendants.

Giant Eagle asserts in opposition that it seeks "limited discovery concerning how XL has handled the claims of other insureds who have sought coverage under materially identical policies and for the exact same litigation for which Giant Eagle has sued for coverage."  Br. in Opp'n 1, ECF No. 295 (emphasis omitted).[14]  Giant Eagle asserts that it seeks discovery on XL's coverage determinations involving identical language, similar insureds, and the same underlying opioid litigation claims.  *Id.*  More specifically, it explains:

> Giant Eagle seeks only limited discovery concerning the position(s) that XL and its affiliated insurers have taken with respect to: (i) other defendants in; (ii) the 28 opioid-related lawsuits for which Giant Eagle presently seeks coverage (the "Opioid Lawsuits"); (iii) who have sought coverage from XL or XL-affiliated insurers; and (iv) under an "occurrence"-based liability (including general liability, excess liability and umbrella) policy with materially identical terms.

*Id.* at 1-2 (footnote omitted).  It has further offered to limit its request to fourteen specific entity policyholders or any of their affiliates who have been sued in the Opioid Lawsuits as distributing and/or dispensing co-defendants.[15]  *Id.* at 2.

Giant Eagle argues that courts prohibit "'other insureds' discovery only where such discovery encompasses a wide and significantly different set of factual circumstances (e.g., disability claims) or where the requests are broad enough to implicate hundreds or thousands of policies[,]" and argues that neither of those scenarios is implicated by the discovery sought by

---

[14] The Court notes AGLIC's argument that:

> While Giant Eagle argues that its discovery is "limited" to policies with "*presumptively* the same policy terms" because liability insurance policies "*typically* are form policies," it provides no authority to support this contention.  The requests also are not limited to policies governed by Pennsylvania law.  The positions AGLIC may have taken under different policies and policy language governed by different law are not relevant here.

ECF No. 298 at 4 (footnote omitted).

[15] "[T]hese 14 policyholders are: Amerisource Bergen Corp., Cardinal Health, Inc., CVS Health Corp., Costco Wholesale Corp., Discount Drug Mart Inc., The Giant Co. LLC., H.D. Smith Wholesale Drug Co., LLC, The Kroger Co., McKesson Corp., Publix Supermarkets, Inc., Rite Aid Corp., Value Drug Co., Walgreen Co., and Walmart, Inc."  ECF No. 306 at 7.

Giant Eagle.  ECF No. 295 at 1.  With respect to relevance, Giant Eagle argues: (1) "XL's treatment of similarly situated policyholders seeking coverage for the same claims as Giant Eagle under the same material policy terms is relevant to the interpretation of those terms.";[16] (2) "the information is relevant to XL's affirmative defenses."[17]; and (3) "discovery concerning other policyholders is relevant to Giant Eagle's bad faith claims."[18]  *Id.* at 2-4.

Courts in this Circuit faced with materially similar discovery requests routinely prohibit such discovery on the basis of both relevance and proportionality.  Se*e Zettle v. Am. Nat. Prop. & Cas.*, Co., No. 3:10-CV-307, 2012 WL 2359962, at *1 (W.D. Pa. June 20, 2012) ("Further, as Defendant rightfully notes, courts in this district have held that discovery of other insureds' claims in bad faith cases is generally improper, as such information is irrelevant."); *see also Graham v. Progressive Direct Ins. Co.*, No. CIV.A. 09-969, 2010 WL 3092684, at *1 (W.D. Pa. Aug. 6, 2010) ("This appears to have been the proper decision, because, as the Court recognized at the motion hearing, the majority of the opinions addressing this issue disfavor the discovery of similar claims evidence in bad faith cases." (collecting cases)); *Horvath v. Globe Life & Accident Ins. Co.*, No. 3:18-CV-84, 2019 WL 975172, at *4 (W.D. Pa. Feb. 28, 2019) (noting "the general rule that courts in the Third Circuit disfavor the discovery of similar claims evidence in bad faith cases."); *McCrink v. Peoples Benefit Life Ins. Co.*, No. CIV.A.2:04CV01068LDD, 2004 WL 2743420, at *6 (E.D.

---

[16] *See also* ECF No. 275 at 4 ("First, it is relevant to interpretation of material policy terms.  E.g., the parties dispute whether the Opioid Lawsuits qualify as 'occurrences' under Insurers' policies, and whether they seek 'damages because of "bodily injury."'  It is relevant how Insurers have interpreted these terms in other opioid cases.").

[17] *See also* ECF No. 275 at 4-5 (arguing that XL has invoked the "known loss doctrine," and that "Insurers have put Giant Eagle's knowledge of opioid claims at issue; certainly, Giant Eagle is entitled to explore Insurers' knowledge of those claims, including knowledge Insurers obtained because of other opioid claims.").

[18] *See also* ECF No. 275 at 5 ("Discovery about Insurers' treatment of similarly situated insureds may lead to evidence that supports this claim; including, for example, that Insurers withheld coverage because of their total financial exposure to opioid claims rather than on their policy terms.").  Again, bad faith is only at issue in Case 1, and this argument thus does not apply in Case 2.  Giant Eagle has acknowledged the same.  *See* ECF No. 306 at 10.

Pa. Nov. 29, 2004) ("Courts within the Third Circuit generally refuse to permit discovery of previous lawsuits filed against insurance companies concerning the disputed policy provisions at issue in the current bad faith litigation.  Following these rulings, this Court finds that the burden and expense of producing the information requested in Interrogatory 30, which seeks information regarding all bad faith cases concerning the motorcycle exclusion brought against defendant, outweighs the likelihood of finding relevant material." (citation omitted) (collecting cases)); *Fid. & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 526 (E.D. Pa. 1996) ("Allowing discovery of other actions which concerned completely different facts and circumstances would 'run counter to the important but often neglected Rule 1 of the Federal Rules of Civil Procedure which requires that all rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."'" (quoting *North River Insurance Company v. Greater New York Mutual Insurance Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa.1995))); *Shellenberger v. Chubb Life Am.*, No. CIV.A. 95-4514, 1996 WL 92092, at *3 (E.D. Pa. Feb. 29, 1996) ("Even if there are other similar suits regarding payment of 'own occupation' disability benefits, the fact of these suits is unlikely to be relevant to the question of whether Defendants acted in bad faith in denying Plaintiff's claim.  While the discovery rules should be construed liberally, discovery is not a fishing expedition." (citation omitted)); *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989) ("The information which Leksi seeks concerning the files of other insureds [with respect to claims similar to Leksi's] is disproportionate to the declaratory judgment action it has filed.  To compel the production of the files of other insureds not only involves enormous inconvenience and management difficulties, but also entails a frightening potential for spawning unbearable side litigation which, in my view, defeats the purpose and spirit of the discovery rules themselves."); *Principal Life Ins. Co. v. DeRose*, No. 1:08-CV-2294, 2010 WL 11549913, at *4

(M.D. Pa. Jan. 11, 2010) ("But even if the requests arguably have some tenuous relevance to this case or to Defendants' potential defenses, such as waiver, we find that requiring Principal to respond fully to these requests would not only be unreasonably burdensome but would also require Principal to disclose confidential information relating to other policyholders and agents.").

Giant Eagle has, however, pointed to several cases where certain limited discovery similar to that sought by Giant Eagle was permitted. *See Mine Safety Appliances Co. v. N. River Ins. Co.*, No. 2:09-CV-00348-DSC, 2012 WL 4339560, at *3 (W.D. Pa. Jan. 27, 2012), *report and recommendation adopted as modified*, No. 2:09-cv-00348-DSC, 2012 WL 4339097 (W.D. Pa. Sept. 20, 2012) (finding similar discovery relevant but noting "I have not been furnished with any cases from the Western District of Pennsylvania."); *see also Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, No. CIV. A. 88-9752, 1991 WL 78200, at *3 (E.D. Pa. May 7, 1991), *modified*, No. CIV. A. 88-9752, 1991 WL 111040 (E.D. Pa. June 17, 1991) ("Initially, I find that the information is relevant for the purposes of discovery since, 1) it may show that identical language has been afforded various interpretations by the insurer and, 2) the interpretations suggested by the insurers may not be the same as those intended by the original drafters."); *Consugar v. Nationwide Ins. Co. of Am.*, No. 3:10CV2084, 2011 WL 2360208, at *6 (M.D. Pa. June 9, 2011) ("The court concludes that requests for files on other claims, since they could reveal patterns of denials of claims similar to plaintiff's are reasonably calculated to lead to admissible evidence.  As such, the court will order the defendant to comply with the request."); *PECO Energy Co. v. Ins. Co. of N. Am.*, 852 A.2d 1230, 1235 (Pa. Super. 2004) (allowing discovery into other insureds' claims information where the requests were not unduly burdensome and reasonably limited and where confidential information was redacted); *Williston Basin Interstate Pipeline Co. v. Factory Mut. Ins. Co.*, 270 F.R.D. 456, 466 (D.N.D. 2010) ("For many of the reasons discussed above with respect to the

other discovery requests at issue, the court agrees with the cases that have concluded that evidence regarding insurers treatment of other insureds is relevant (at least in the broad sense contemplated by Rule 26) to the construction and application of the disputed policy language as well as to claims of 'bad faith.'"); *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. CIV.A 2:07-CV-1285, 2009 WL 243034, at *5 (S.D. Ohio Jan. 30, 2009) ("Conversely, Grange seeks information regarding plaintiff's treatment of Other Insureds' claims based on the same triggering event, the Hensley Action.   The Court concludes that such information is reasonably calculated to lead to the discovery of admissible evidence.").

In distinguishing the case law cited by XL, Giant Eagle asserts that the "other insured" discovery requested in those cases was much broader because it involved types of insurance claims and underlying lawsuit claims that, by their nature, involved particular factual circumstances that were likely to differ significantly from case to case.  Br. in Opp'n 5, ECF No.  Giant Eagle asserts that "the discovery Giant Eagle seeks is confined to 14 other policyholders similar to Giant Eagle and who not only sought coverage under the same policy terms at issue but did so for the exact same underlying claims and lawsuits in which the co-defendants were alleged to be jointly and severally liable."  *Id.* at 6 (emphasis omitted); *see also* ECF No. 275 at 6 ("Giant Eagle has sought discovery limited to a discrete number of policyholders: (1) to whom Insurers issued policies with the same terms; and (2) who sought coverage for precisely the same underlying claims.  Insurers have made no showing that such limited requests would impose any undue burden or are otherwise not proportional to the needs of this case." (emphasis omitted)).

The Court's review of the briefing in these cases and the case law cited by parties indicates that the weight of the authority in this Circuit is likely against Giant Eagle.  Giant Eagle argues, however, that such cases are distinguishable because of the limited nature of the discovery sought

by Giant Eagle in this case, and further due to the similarity between the policyholders, policy terms, and underlying opioid lawsuit claims against the policyholders.  While limiting the amount of discovery sought certainly moves the proportionality needle, it does not render moot the general holding in the case law cited above that "other insured" discovery is typically either irrelevant or only tenuously relevant.  In this Court's estimation, Giant Eagle still faces a substantial hurdle in attempting to overcome that general tenet in the context of the discovery it seeks.

It bears noting that XL has provided testimony that "no XL company is defending a policyholder in connection with an opioid claim[,] so there is no inconsistency with respect to this precise fact which is the clear focus of the discovery requests." ECF No. 305 at 5.  More importantly, the Court finds that, despite whatever limited relevance the discovery sought by Giant Eagle respecting other insureds might have (and the Court agrees with the authority cited above that the relevance of such information to any claim or defense is likely minimal and could result in the creation of mini-trials respecting the potential similarity of insurance policy terms and the claims/allegations against different defendants in the underlying opioid lawsuits), the relevance of the information is clearly outweighed by the burden of production.  The parties tend to agree, except when it is to their benefit to disagree, that this action will be largely, if not entirely, driven by the terms of the relevant insurance policies *between Giant Eagle and Defendants* and the nature of the underlying opioid actions *against Giant Eagle*.  While the Court understands Giant Eagle's desire to probe Defendants' insurance relationships with Giant Eagle's co-defendants in the underlying opioid lawsuits, the Court is constrained to conclude that such discovery requests are disproportional and not adequately likely to lead to the discovery of admissible evidence.  XL's Motion for Protective Order is granted, and Giant Eagle's Motion to Compel seeking other insured discovery from all Defendants will be denied.

### D.  AGLIC's Motion for Protective Order (ECF No. 276) in Case 1

AGLIC's Motion for Protective Order seeks to preclude discovery requests seeking information regarding AGLIC's reinsurance arrangements that AGLIC redacted from its document production.   AGLIC asserts that its reinsurance arrangements are confidential and entirely irrelevant to the claims at issue in this case.  Br. in Supp. 1, ECF No. 277.  The Case 2-Only Defendants have joined in AGLIC's Motion for Protective Order.  *See* ECF No. 101 at 1-2 ("Even though Giant Eagle has not served a single document request on Defendants related to reinsurance and has not challenged the adequacy of Defendants' initial disclosures served months ago, Giant Eagle advised Defendants that if the Court compels AGLIC to produce reinsurance materials, Giant Eagle will seek the same from Defendants.  Defendants reserve the right to object to such request if Giant Eagle ever makes it.  However, out of an abundance of caution, Defendants join AGLIC's motion for a protective order as to the production of reinsurance materials and seek a protective order as to Defendants.").  AGLIC filed its Brief in Support at ECF No. 277.  Giant Eagle filed its identical responses to AGLIC's Motion for Protective Order on each docket at ECF Nos. 296 and 111.  AGLIC filed its reply at ECF No. 307, to which the Case 2-Only Defendants joined.  *See* ECF No. 120.  The briefing related to Giant Eagle's Motion to Compel is also relevant to this issue.

AGLIC asserts that "[r]einsurance is a mechanism of risk transfer and diversification which is fundamentally different from insurance."  ECF No. 277 at 2 (citing *British Ins. Co. of Cayman v. Safety Nat'l Cas.*, 335 F.3d 205, 211-12 (3d Cir. 2003)).  AGLIC further asserts that:

> Courts routinely agree that reinsurance agreements and information are irrelevant and therefore not discoverable unless: (1) the reinsurance agreement is directly at issue; or (2) reinsurance is otherwise relevant to a specific issue in the litigation (e.g., policy interpretation); and (3) the materials are not privileged or confidential.

*Id*.  It argues that "Giant Eagle has identified no issue to which reinsurance could possibly be relevant[,]" and that "confidential reinsurance information also is not required under Federal Rule of Civil Procedure 26(a)(1)(A)(iv), which does not reference reinsurance."  *Id.* at 3-4.

Giant Eagle argues that AGLIC's Motion for Protective Order should be denied for the following reasons:

> First, the reinsurance information sought by Giant Eagle, which includes both the reinsurance agreements themselves and the communications between Defendants and Defendants' reinsurers concerning these cases, is plainly relevant to the claims and defenses asserted by Defendants in this action and the interpretation of the policies at issue.  Second, disclosure of the reinsurance information pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv) is required because money damages are sought from Defendants and, regardless, disclosure would serve the purposes of that rule by substantiating or refuting Defendants' arguments—including whether various affirmative defenses and/or exclusions apply to Giant Eagle's claim.

ECF No. 296 at 3 (emphasis omitted); *see also* ECF No. 275 at 9 ("Reinsurance agreements 'must' be produced where, as here, a policyholder seeks damages from a reinsured insurer.").  More specifically, Giant Eagle argues that: (1) "reinsurance information is relevant because it bears on Defendants' claims and defenses in these cases, as well as interpretation of various disputed policy terms[,]" (2)  "Defendants have failed to articulate any reason why reinsurance information is not relevant to their late-notice defense"; and (3) reinsurance information is relevant to Defendants' recission counterclaim.  ECF No. 296 at 3-4.

Initially, and consistent with the Court's analysis that follows, the Court rejects any argument that, in the absence of an assertion or finding of ambiguity, reinsurance information should be produced because it might someday clear up an ambiguity.  The Court also rejects the argument that reinsurance information should be produced even where a party cannot establish any potential relevance of such information.  Accordingly, the Court's decision herein rests on whether reinsurance information is relevant to AGLIC's late-notice defense or recission

counterclaim.  Because such information is relevant to both AGLIC's late-notice defense and recission counterclaim, the Court will deny AGLIC's Motion for Protective Order, and will grant Giant Eagle's Motion to Compel as to reinsurance information.

"By raising a defense, a party opens the door to the discovery concerning that defense." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, No. CIV. A. 88-9752, 1991 WL 237636, at *2 (E.D. Pa. Nov. 7, 1991).  Even the cases cited by AGLIC suggest that discovery into reinsurance may be appropriate where a party raises an affirmative defense involving notice or a counterclaim for recission based upon misrepresentation.  *See id.* at * 3 ("Since whether or not the insurers gave timely notice to their reinsurers is clearly relevant to the notice defenses raised by many of the insurers, that information should be discoverable as to those insurers. . . .  Plaintiffs['] purpose for seeking the reinsurance information is simple; they wish to determine whether or not timely notice was given to the reinsurers by the insurers.  If such notice was given, it is evidence that the insurers had timely notice, and would moot the lack of notice defenses. . . . Plaintiffs also seek the reinsurance agreements and communications for the purpose of refuting the defenses raised by many of the insurers that plaintiff failed to disclose material facts.  One insurer, Republic, has gone further and seeks rescission of the contract on the grounds of misrepresentation.  These defenses clearly put at issue the question of what the defendants knew at the time the disputed policies were issued."); *see also Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc.*, No. CIV A 01 CV 2394, 2002 WL 1870452, at *4 (E.D. Pa. July 29, 2002) ("In sum, the court in the *Rhone–Poulenc* cases took the position that reinsurance is, in many instances, discoverable for purposes of rebutting a defense, particularly of misrepresentation (*as well as nondisclosure), lack of or late notice*, or lost policy.  However, reinsurance materials are irrelevant to determining the intent of the contracting parties or interpretation of an unambiguous insurance policy provision." (emphasis added)).

The information sought by Giant Eagle respecting reinsurance is relevant to AGLIC's late-notice defense and recission counterclaim.  Accordingly, AGLIC's Motion for Protective Order is denied, and Giant Eagle's Motion to Compel reinsurance information is granted.

**E.  Giant Eagle's Motions to Compel in Case 1 and Case 2 (ECF Nos. 274 and 98)**

Giant Eagle has filed identical motions to compel, as well as identical briefs in support (ECF Nos. 275 and 99) and replies (ECF Nos. 306 and 118) in each of the cases.  Accordingly, the Court will address these motions together.  AGLIC has filed responses to these motions to compel at ECF Nos. 298 and 112, XL filed a response at ECF No. 299 and a partial joinder (ECF No. 300) in AGLIC's response,[19] and the Case 2-Only Defendants filed their response at ECF No. 116.  *See also* ECF No. 117 (Liberty's joinder in response).[20]

**1.  Motion to Compel as to AGLIC (Case 1)**

In Case 1, Giant Eagle moves to compel the following from AGLIC: (1) responses to Giant Eagle's "other insured" discovery requests, including a response to Interrogatory No. 3, the production of non-privileged documents responsive to Request for Production No. 11, and the production of a witness to testify on Topic 10 of Giant Eagle's Rule 30(b)(6) Notice; (2) a response to Giant Eagle's discovery request related to the Druggists Professional Liability Exclusion, and specifically the production of non-privileged documents responsive to Request for Production No. 3; and (3) the production of reinsurance agreements and related documents previously withheld

---

[19] As noted, the partial joinder is to AGLIC's argument regarding "other insured" discovery, which XL also addressed in its Motion for Protective Order.

[20] To the extent Giant Eagle's motions to compel cross over with the motions for protective orders filed by AGLIC (which was joined by the Case 2-Only Defendants) and XL, the Court will note the same.

from production in response to Requests for Production Nos. 1 through 10.[21]  Mot. ¶ A, ECF No. 274.

### a.  "Other Insured" Discovery

The Court has addressed all arguments raised by AGLIC related to "other insured" discovery in resolving XL's Motion for Protective Order above.  As noted, XL joined in AGLIC's arguments respecting "other insured" discovery, and the Court has granted XL's Motion for Protective Order and will thus deny Giant Eagle's Motion to Compel AGLIC to produce "other insured" discovery.

### b.  Discovery Request Related to Druggists Professional Liability Exclusion or Endorsement

The discovery at issue in this subsection is related to the drafting of a Druggists Professional Liability Exclusion or Endorsement contained within AGLIC's policies.  Giant Eagle argues that it "is entitled to discovery regarding the drafting of specific policy terms that some Insurers have invoked as defenses to coverage, regardless [of] whether there has been a claim that those terms are ambiguous."  ECF No. 275 at 9.  AGLIC asserts that Giant Eagle's discovery request is moot as to AGLIC because "AGLIC has advised Giant Eagle that it is withdrawing its affirmative defenses based on the Druggist Professional Liability exclusions in its policies.  ECF No. 298 at 1 n.1.[22]

---

[21] This reinsurance discovery is also at issue in AGLIC's Motion for Protective Order.

[22] Giant Eagle responds to this assertion by stating:

> To the extent that Discover and the various insurers that issued policies excess of, and which follow form to, the AGLIC Policies also agree to withdraw their respective affirmative defenses based on the druggists/professional liability exclusions, the disputed discovery on this issue may be moot. The motion is not moot with respect to AGLIC, which should be required to produce the drafting history of its endorsements if any Insurer following the AGLIC form is relying on the AGLIC language for its Affirmative Defense.

ECF No. 306 at 15 n.15.

The Court is without sufficient information to resolve Giant Eagle's Motion to Compel a response to its discovery request related to the Druggists Professional Liability Exclusion or Endorsement in AGLIC's policy. Giant Eagle's primary argument in support of its Motion to Compel such information is that the information is relevant because Defendants rely on such contract provisions in asserting affirmative defenses. AGLIC has withdrawn its affirmative defense relying on Druggist Professional Liability exclusions in its policies. While Giant Eagle asserts that AGLIC should be required to produce the drafting history of its endorsements if any Defendant following the AGLIC form is relying on the AGLIC language for its Affirmative Defense, it fails to provide analysis respecting such an assertion. In light of the same, the Court hereby directs the parties to confer respecting this issue. If they cannot resolve this dispute with respect to AGLIC with the benefit of the Court's holdings herein and following conferral, Giant Eagle is hereby granted leave to renew its Motion to Compel as to AGLIC's drafting history of its endorsements.

### c. Reinsurance Discovery

The Court has fully addressed the discoverability of AGLIC's reinsurance arrangements in resolving AGLIC's Motion for Protective Order above. The Court has denied AGLIC's Motion for Protective Order and will thus grant Giant Eagle's Motion to Compel AGLIC to provide reinsurance discovery.

### 2. Motion to Compel as to XL (Case 1)

Giant Eagle moves to compel the following from XL: (1) responses to Giant Eagle's "other insured" discovery requests, including a response to Interrogatory No. 3, the production of non-privileged documents responsive to Request for Production No. 13, and the production of a witness

to testify on Topic 11 of Giant Eagle's Rule 30(b)(6) Notice;[23] (2) responses to Giant Eagle's discovery requests concerning underwriting, and specifically the production of Lou Forte and June Dell for depositions and the production of a corporate designee to testify on Topic 1 of Giant Eagle's Rule 30(b)(6) Notice; and (3) responses to Giant Eagle's discovery requests regarding XL's "Control Substance Exclusion with Exception for Prescription Misfill," and specifically the production of non-privileged documents responsive to Requests for Production Nos. 4 through 6 and the production of a corporate designee to testify on Topic 1 of Giant Eagle's Rule 30(b)(6) Notice.  Mot. ¶ B, ECF No. 274.

### a.  "Other Insured" Discovery

The Court has addressed all arguments related to "other insured" discovery in resolving XL's Motion for Protective Order above.  The Court has granted XL's Motion for Protective Order and will thus deny Giant Eagle's Motion to Compel to produce "other insured" discovery.

### b.  Discovery Requests Concerning Underwriting

The discovery at issue in this subsection requests deposition testimony related to XL's underwriting of the XL Policies.  Giant Eagle argues that "[u]nderwriting discovery is routinely allowed and is relevant to show the risks that XL expected to cover when it issued the policies to Giant Eagle, how XL has interpreted the disputed policy terms, and (once the parties' contentions are known) whether those terms are ambiguous."  ECF No. 275 at 6.  XL argues that the information sought respecting underwriting is not relevant to any party's claims or defenses and is not proportional to the needs of the case because, as Giant Eagle concedes, no party has claimed that the XL policy provisions at issue are ambiguous.  ECF No. 299 at 4.  In reply, Giant Eagle asserts that conditioning discovery on a finding of ambiguity would result in piecemeal litigation,

---

[23] This "other insured" discovery is also at issue in XL's Motion for Protective Order.

and that extrinsic evidence can be useful in identifying a potential ambiguity in the first instance. ECF No. 306 at 3-4.

Giant Eagle cites to out-of-circuit case law in arguing that ambiguity need not be established, or even asserted, before discovery into potential extrinsic evidence is permissible. *See Silgan Containers v. Nat'l Union Fire Ins.*, No. C 09–05971 RS (LB), 2010 WL 5387748, at *4 (N.D. Cal. Dec. 21, 2010) ("Although the interpretation of an insurance policy is a legal question, an insured is entitled to explore what risks the insurer expects to cover in the policy." (citing *Quan v. Truck Ins. Exchange*, 67 Cal.App.4th 583, 602, 79 Cal.Rptr.2d 134 (1998))); *see also id.* at *9 ("But whether or not the contract is ambiguous is not the inquiry at the discovery stage. National Union may be right that extrinsic evidence would be inadmissible at trial, but that is not the standard that the court uses to evaluate relevancy for discovery."); *Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, No. 08 CIV. 3604 BSJ/JCF, 2009 WL 3817600, at *4 (S.D.N.Y. Nov. 16, 2009) ("Again, however, Continental espouses too narrow a view of relevance. In its Answer, it contends that the underlying facts here did not constitute an 'occurrence' or an 'accident' within the terms of the Policy, that the lawsuit between Celebrity and the Essef defendants was not a 'suit,' 'action,' or 'proceeding' under the Policy, and that the underlying action did not seek amounts that Pentair was legally obligated to pay as damages. Each of these defenses, among others, raises issues that implicate Continental's underwriting practices. In order to interpret the Policy, Pentair is entitled to explore what risks Continental expected to cover when it used terms similar to those in the Policy."); *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. CIV.A 2:07-CV-1285, 2009 WL 243034, at *8 (S.D. Ohio Jan. 30, 2009) (rejecting argument "that the underwriting files amount to impermissible extrinsic evidence, which has previously been denied by other courts unless or until it is determined that a policy's language is ambiguous."); *Lincoln*

*Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 684 (6th Cir. 2000) ("Extrinsic evidence can become a consideration before an ambiguity has been identified from the face of the contract as a matter of law, in the limited sense that such evidence can assist the court in determining whether, as a matter of law, two plausible interpretations exist in the manner necessary to give rise to the existence of an ambiguity.").

XL cites to *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. 107 (M.D. Pa. 2017), a Middle District of Pennsylvania case wherein the *Westfield* court attempted to synthesize relevant Pennsylvania law respecting the proportionality of discovery requests seeking extrinsic evidence such as underwriting information.  The *Westfield* court held that "litigants who wish to discover extrinsic evidence in a contract interpretation case must (1) point to specific language in the agreement itself that is genuinely ambiguous or that extrinsic evidence is likely to render genuinely ambiguous; and (2) show that the requested extrinsic evidence is also likely to resolve the ambiguity without imposing unreasonable expense." *Westfield Ins.*, 321 F.R.D. at 109–10; *see also Medmarc*, 2002 WL 1870452, at *5 (denying discovery requests for extrinsic reinsurance contracts where no party asserted insurance contract was ambiguous); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 612 (E.D. Pa. 1991), *on reconsideration in part*, No. CIV. A. 88-9752, 1991 WL 237636 (E.D. Pa. Nov. 7, 1991). ("[T]he appropriateness of [extrinsic evidence] discovery should not even be an issue unless and until there has been a finding by the District Court that one or more of the provisions of the policies at issue is ambiguous."); *Fed. Ins. Co. v. Sandusky*, No. 4:11-CV-02375, 2013 WL 785269, at *8 (M.D. Pa. Mar. 1, 2013) ("In an unambiguous, written contract, the intent of the parties is to be ascertained by the document itself, without inquiry into extrinsic evidence.").

This Court is inclined to agree with the well-reasoned analysis set forth in *Westfield* requiring some assertion/showing of potential ambiguity, i.e., relevance, before an insured is entitled to the discovery of extrinsic information that could assist in contract interpretation if the court ultimately finds ambiguity. Because XL is correct that no party has asserted that the terms of the XL policies are ambiguous, Giant Eagle fails to establish that the underwriting discovery is relevant to its contract/coverage claim. Case 1 is notably distinct from *Westfield*, however, in that, at the time Judge Brann issued his decision in *Westfield*, that case no longer involved allegations of bad faith. *See Westfield Ins.* at 109; 114 (explaining that "[t]he instant motion to compel requires me to determine whether, and to what extent, extrinsic evidence is discoverable in a declaratory insurance coverage action *where bad faith is no longer at issue*," and later explaining that "[a]nother factor bearing upon the discoverability of extrinsic evidence like underwriting files and training manuals is whether a bad faith claim is still being litigated at the time of the request. The existence of such a claim makes discoverability more likely, yet it by no means guarantees it." (emphasis added)).

The United States District Court for the District of New Jersey, relying on *Westfield*, recently explained:

> The Court finds *Westfield*'s analysis and conclusion on point. As noted, adopting either party's position results in a somewhat difficult result: either AdvanSix will be tasked with demonstrating an ambiguity without the benefit of evidence that may aid it in doing just that, or the Insurers will have to produce extrinsic discovery for the purpose of interpreting a contract ambiguity that has not yet been shown to exist (nor may it ever). For the reasons set forth in *Westfield*, requiring some threshold showing of an ambiguity, the resolution of which may turn on exploration of extrinsic evidence, seems the most reasonable and equitable solution to this quandary. Because AdvanSix has not "point[ed] to specific language in the agreement itself that is genuinely ambiguous" or "show[n] that the requested extrinsic evidence is also likely to resolve the ambiguity without imposing unreasonable expense" — and certainly has not made an "affirmative showing that the mutual intent of the parties is contrary to the agreement's facial meaning" — *see id.*, the Court rejects AdvanSix's argument that the underwriting materials are

discoverable to aid in contract interpretation and therefore relevant to its breach of contract claim.

*AdvanSix Inc. v. Allianz Glob. Risks US Ins. Co.*, No. 2:21-cv-07962-MCA-CLW, 2023 WL 179963, at *3 (D.N.J. Jan. 13, 2023).   That said, the *AdvanSix* court ultimately compelled the production of the discovery sought, concluding that "the underwriting materials [were] relevant to AdvanSix's bad faith claim" and proportional to the needs of the case.   *Id.* at *5; *see also Westport Ins. Corp. v. Hippo Fleming & Pertile L. Offs.*, 319 F.R.D. 214, 217 (W.D. Pa. 2017) ("In the Court's view, production of the underwriting materials is proper under the facts of this case.   Here, while Hippo does not bring any underwriting claims, it does bring a bad faith claim along with the breach of contract/coverage claim.").

While the information sought respecting the underwriting, negotiation, placement, and sale of the XL Policies may not be relevant to Giant Eagle's contract claim, it is relevant to its bad faith claim.   Further, as all courts to consider the issue have at least tacitly acknowledged, the information may assist in the identification of potential ambiguities.   Because the information is relevant to Giant Eagle's bad faith claim, the Court finds the discovery requests respecting underwriting are reasonably calculated to lead to the discovery of admissible evidence, and, accordingly, the Court hereby compels XL to provide a Rule 30(b)(6) deponent to testify respecting the underwriting, negotiation, placement, and sale of the XL Policies.   The Court further notes that XL's relevance objections are, at least somewhat, undermined by Giant Eagle's assertion that "XL has demanded testimony from a Giant Eagle corporate witness concerning the 'negotiation, underwriting, terms, conditions, meaning, placement and purchase of the insurance policies at issue in this matter,' and Giant Eagle has agreed to produce a witness subject only to general privilege objections[,]" a contention XL does not contest.

### c. Discovery Requests Regarding XL's "Control Substance Exclusion with Exception for Prescription Misfill"

With respect to the discovery at issue in this subsection, which deals with XL's "Control Substance Exclusion with Exception for Prescription Misfill," Giant Eagle explains:

> After the creation of the Opioid MDL in 2017, XL inserted a new endorsement into the 2019 Policy it sold to Giant Eagle that was not in the two prior policies.  The 2019 Policy endorsement excludes coverage for "any actual or alleged . . . [a]buse, misuse, illicit use, overuse, unlawful distribution, diversion of, or addition to any . . . opioid or narcotic drug . . ." (the "Opioid Exclusion").  Giant Eagle seeks documents relating to "negotiation, underwriting, drafting, placement or issuance" of the exclusion and testimony concerning "when and why [XL] began to include exclusions relating to opioids in liability policies that it sold."

> Such discovery is relevant and should be produced.  Among other things, the information sought will elucidate why XL added an express Opioid Exclusion to the 2019 Policy; whether the Exclusion was in reaction to the claims (or types of claims) at issue in the Opioid MDL; and whether, in the absence of the Exclusion, XL believed the standard terms of its policies covered the types of claims presented in the Opioid MDL.

ECF No. 275 at 8.

XL argues that Giant Eagle is incorrect about the discoverability of the information sought by way of this discovery request for the following reasons: (1) the 2019 policy is not at issue, and, in the absence of ambiguity, it is the terms of the policies at issue that governs their interpretation, not XL's beliefs about them; (2) the controlled substances exclusion is not a "relevant clause" under *Sickora v. Nw. Mut. Life Ins. Co.*, No. CIV. A. 00-6194, 2001 WL 1202800 (E.D. Pa. Oct. 10, 2001) because the requested discovery does not pertain to a policy term in the relevant policies; (3) the Court should not rely on *Sickora* because the holding in that case relied on *Nestle Foods Corp. v. Aetna Casualty and Surety Co.*, 135 F.R.D. 101 (D.N.J. 1990), which the *Westfield* court distinguished because the movant in *Nestle* had identified likely linguistic sources of ambiguity and because Pennsylvania state law did not apply in *Nestle*; and (4) Giant Eagle's assertion, specifically that the discovery at issue is relevant because the lack of the specific exclusion in the

relevant policies, and, by extension, the introduction of the exclusion in the 2019 policy, might

tend to prove that XL believed the standard terms of the policies at issue covered the types of

claims presented in the Opioid MDL, is commonly rejected, because insurance policies often

contain overlapping "belt-and suspenders" provisions.[24]  ECF No. 299 at 6-8.

In considering similar requests, the United States District Court for the Eastern District of

Pennsylvania has explained:

> Plaintiff is entitled to discovery of drafting histories relating to the "care of a
> physician" clauses in the subject policies.  Plaintiff requests documents relating to
> the change in insurance coverage language between the first two policies and the
> third policy.  He requests only such discovery as relates to the drafting history of
> the "care of a physician" clause.  Discovery of drafting history is permissible
> although the question of ambiguity has not yet been decided.

*Sickora*, 2001 WL 1202800, at *1; *but see McPeek v. Travelers Cas. & Sur. Co. of Am.*, No. 2:06-

CV-114, 2006 WL 8457470, at *1 (W.D. Pa. Nov. 3, 2006) (denying without prejudice motion to

compel discovery requests seeking to "explore drafting history, the application of the Contract

Exclusion to other unrelated claims, reinsurance, or the other topics to which Defendant has

objected."); *Britamco Underwriters, Inc. v. B&D Milmont Inn, Inc.*, No. CIV. A. 95-6039, 1996

WL 476624, at *1 (E.D. Pa. Aug. 16, 1996) (holding that "[d]ocuments such as drafting history of

the "assault and battery exclusion" are irrelevant to the court's narrow task of comparing the

allegations of the complaint to the specific policy language[,]" but acknowledging that the

documents may be relevant to a bad faith claim and allowing defendants to renew their motion to

compel should the court deny summary judgment on issue of the duty to defend).

---

[24] *See* ECF No. 299 at 8 (providing: "Insurance policies often contain overlapping 'belt-and-suspenders' provisions[,]"
and citing: (1) *Citizens Insurance Co. v. Risen Foods, LLC*, 880 F.3d 73, 79 (2d Cir. 2018) for the proposition that
"[i]t is not surprising that a document, especially one drafted by an insurance company, would use a 'belt and
suspenders' approach[.]"); (2) *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 68 (1st
Cir. 2012) for the proposition that "insurance policies are notorious for their simultaneous use of both belts and
suspenders, and some overlap is to be expected[.]"; and (3) *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 577 (6th
Cir. 2010) for the proposition that "'redundancies abound' in insurance contracts and that the belt-and-suspenders
approach to drafting is common[.]").

The Court will deny Giant Eagle's Motion to Compel as to the "Control Substance Exclusion with Exception for Prescription Misfill" that is not included in the relevant XL policies. As XL correctly notes, and as Giant Eagle argues in opposing the deposition of its lead counsel, it is the terms of the policies at issue themselves that will be at issue in this case in the first instance, and not XL's beliefs.  Should the Court ultimately find the exclusions in the XL policies at issue in this litigation are ambiguous, or should Giant Eagle sufficiently meet the *Westfield* standard for production with respect to the 2019 exclusion, the Court will entertain future argument respecting the discoverability of information about the "Control Substance Exclusion with Exception for Prescription Misfill."  At this juncture, however, the Court finds that the discovery sought is not likely to lead to the discovery of admissible evidence and is not proportional to the needs of the case, and Giant Eagle's Motion to Compel is denied as to this request.

### 3.   Motion to Compel as to Case 2-Only Defendants and AGLIC (Case 2)

In Case 2, Giant Eagle moves to compel the following: (1) responses from all Case 2 Defendants to Giant Eagle's "other insured" discovery requests,[25] including responses to Interrogatory No. 5 and the production of non-privileged documents responsive to Requests for Production No. 9 (or No. 8 with respect to Liberty); (2) responses from AGLIC, Federal, Discover, and St. Paul to Giant Eagle's discovery request regarding the various "Druggists" endorsements or exclusions, and specifically the production of non-privileged documents responsive to Request for Production No. 3; and (3) AGLIC's production of reinsurance agreements and related documents previously withheld from production in response to Requests for Production Nos. 1 through 9.[26]

---

[25] Giant Eagle has sought "other insured" discovery from AGLIC in both Case 1 and Case 2.

[26] Giant Eagle has sought reinsurance discovery from AGLIC in both Case 1 and Case 2, and, as noted above, reinsurance discovery is also at issue in AGLIC's Motion for Protective Order.

### a. "Other Insured" Discovery

The Court has addressed Giant Eagle's requests for "other insured" discovery in resolving XL's Motion for Protective Order above. Because the Court has granted XL's Motion for Protective Order, it will deny Giant Eagle's Motion to Compel Case 2-Only Defendants to produce "other insured" discovery.

### b. Request Regarding the Various "Druggists" Endorsements or Exclusions

Similar to the discovery request directed to AGLIC, the discovery at issue in this subsection is related to the drafting of similar endorsements or exclusions that are included in several of the Case 2-Only Defendants' policies. Giant Eagle argues that it "is entitled to discovery regarding the drafting of specific policy terms that some Insurers have invoked as defenses to coverage, regardless [of] whether there has been a claim that those terms are ambiguous." ECF No. 275 at 9. The Case 2-Only Defendants assert:

> Discover, St. Paul, Liberty, Great American, and Federal have already agreed to produce their underwriting files, and Defendants' underwriting files contain the applicable drafting history of each of the policies at issue. Even if there were additional documents outside of Defendants' underwriting files, Giant Eagle does not attempt to explain why it is entitled to any such materials or why the underwriting files are insufficient for Giant Eagle to develop its position as to the meaning of the Druggists Endorsements or Exclusions at issue.

Case 2 ECF No. 116 at 8. They further argue that the production of documents outside of Case 2-Only Defendants' underwriting files regarding the drafting history of the Druggists Endorsements or Exclusions would be unduly burdensome. *Id.* at 9.

Giant Eagle cites to two cases in support of its arguments. *See USX Corp. v. Adriatic Ins. Co.*, 99 F. Supp. 2d 593, 615 (W.D. Pa. 2000), aff'd, 345 F.3d 190 (3d Cir. 2003) ("Given the nature and magnitude of the dispute, the parties were permitted to engage in liberal discovery prior to a determination that various terms in the policies are or are not ambiguous. Plaintiffs were

permitted to explore the drafting history of various provisions, including subsequent revisions or modifications thereof, in order to develop and present fully their position."); *see also Wiseman Oil Co. v. TIG Ins. Co.*, No. CIV.A. 011-1011, 2013 WL 264370, at *12 (W.D. Pa. Jan. 22, 2013), *report and recommendation adopted*, No. CIV.A. 011-1011, 2013 WL 1149953 (W.D. Pa. Mar. 19, 2013) ("[I]ndustry custom or trade usage is always relevant and admissible in construing commercial contracts and does not depend on any obvious ambiguity in the contract[.]").

As noted, however, this Court is inclined to follow the Middle District of Pennsylvania's holding in *Westfield* with respect to requests for extrinsic discovery requests in insurance disputes. No party has asserted that any of the relevant Druggists Endorsements or Exclusions are ambiguous. Importantly, and distinguishing the analysis herein from the Court's analysis respecting XL's underwriting information, Giant Eagle has not asserted bad faith claims against the Case 2-Only Defendants. Giant Eagle fails to satisfy the requirements discussed in *Westfield*, and the information sought is, at best in the absence of a showing of ambiguity, minimally relevant to its breach of contract/coverage claim, and is also disproportionate to the needs of the case. Giant Eagle's Motion to Compel Druggists Endorsements or Exclusions information from the Case 2-Only Defendants is denied.

### c. Reinsurance Discovery

The Court has fully addressed the discoverability of reinsurance arrangements in resolving AGLIC's Motion for Protective Order above. The Court has denied AGLIC's Motion for Protective Order, which the Case 2-Only Defendants have joined, and will grant Giant Eagle's Motion to Compel reinsurance discovery where late-notice defenses or recission counterclaims have been raised.

### F. AGLIC's Motion to Compel in Case 1 (ECF No. 290)

AGLIC's Motion to Compel, which is partially joined by XL, *see* ECF Nos. 282, 311, and 314, seeks an order compelling: (1) production of all nonprivileged, responsive documents requested in AGLIC's First Set of Requests for Production Nos. 1-3 and requiring Giant Eagle to supplement its privilege log to include all documents and communications responsive to those requests which Giant Eagle has withheld based on an assertion of privilege; (2) production of all nonprivileged, responsive documents requested in AGLIC's Third Set of Requests for Production No. 5 and requiring Giant Eagle to supplement its privilege log to include all documents and communications responsive to that request which Giant Eagle has withheld based on an assertion of privilege; (3) production of all nonprivileged, responsive documents requested in AGLIC's Second Set of Requests for Production No. 2; (4) production of a witness or witnesses to testify on Topic Nos. 4, 5, 13 and 15 of AGLIC and XL's Rule 30(b)(6) Notice; and (5) production of Scott Livingston, Esquire for deposition.[27]   AGLIC has filed a brief in support (ECF No. 291), Giant Eagle has filed a response (ECF No. 294), and AGLIC has filed a reply (ECF No. 308), which XL also partially joined, *see* ECF Nos. 311 and 314.[28]

### 1. Documents Concerning Underwriting, Risk Management, Negotiation, and Filing for Claims Under the Old Republic Policies and Documents Relating to the Program Agreement between Giant Eagle and Old Republic

The first category of documents at issue in AGLIC's Motion to Compel consists of documents related to the insurance relationship between Giant Eagle and Old Republic and, more

---

[27] The arguments raised in support of and in opposition to this Motion intersect with those made with respect to several other Motions, including the Motion filed by non-party Scott Livingston.  That Motion will be addressed in full in the context of Mr. Livingston's Motion.

[28] XL has joined AGLIC's Motion to the extent that the Motion requests that Giant Eagle be required to produce documents related to Giant Eagle's self-administration of claims under its fronting insurance program and documents and Rule 30(b)(6) testimony pertaining to Giant Eagle's evaluations of its potential exposure in, and decision to settle, certain underlying lawsuits.  ECF Nos. 311 and 314.

specifically and predominantly, Giant Eagle's handling, as a self-insured entity, of third-party

claims unrelated to any opioid lawsuits.  With respect to this set of requests, AGLIC argues:

> AGLIC requested all documents relating to the Old Republic Policies at issue in
> this matter, including documents concerning underwriting, risk management,
> negotiation, and filing for claims under the Old Republic Policies.  AGLIC also
> requested documents relating to the Program Agreement between Giant Eagle and
> Old Republic.  Due to the unique fronting nature of Giant Eagle's insurance
> program, in which Giant Eagle, not an insurer, handles, defends, and pays its
> general liability insurance claims, AGLIC is entitled to discover how Giant Eagle
> managed, handled, and accounted for those claims, and to compare that to its
> handling and documentation of its insurance claims for the Opioid Lawsuits.  In
> particular, AGLIC is entitled to investigate through discovery whether Giant Eagle
> internally managed the Opioid Lawsuits in a manner consistent with its positions
> in this lawsuit that they are claims for "bodily injury" covered under general
> liability insurance, and whether Giant Eagle accounted for its defense costs for
> other claims as in addition to the SIRs, deductibles, and limits of the Old Republic
> Policies, prior to taking contrary positions in this litigation. . . .

> AGLIC's requests, however, go to one of the fundamental disputes in this matter,
> namely the treatment of defense costs in the underlying Old Republic Policies.
> AGLIC does not seek information on the substance of minor "slip and fall" cases.
> Rather, AGLIC requests information on Giant Eagle's administration of its general
> liability claims and whether Giant Eagle treated the Opioid Lawsuits like claims
> under its general liability program (e.g., claims for damages because of bodily
> injury).  Giant Eagle's administration of non-opioid matters may also show,
> contrary to the positions it has taken in this action, that Giant Eagle paid defense
> expenses outside of the SIRs, deductibles, and limits of the Old Republic Policies.

> The Court has already decided this issue in AGLIC's favor with respect to one of
> the AGLIC Policies.   The Court declined to extend that ruling to all the AGLIC
> Policies, deferring further consideration "until the completion of discovery."  Giant
> Eagle now seeks to thwart that discovery.  Giant Eagle contends that the Opioid
> Lawsuits seek damages because of bodily injury and that its defense costs erode the
> SIRs, deductibles, and limits of the Old Republic Policies.  AGLIC must be allowed
> to explore whether these positions are consistent with Giant Eagle's self-
> administration of its insurance program.

ECF No. 291 at 3-4 (footnote omitted).

It is clear that AGLIC's primary argument respecting relevance is that the information at

issue will assist the parties and the Court in determining what types of payments exhaust the Old

Republic Policies.  *See* ECF No. 308 at 1 ("Documents relating to Giant Eagle's claims handling

and administration under its fronted insurance program, in which it essentially acts as the insurer, are relevant to Giant Eagle's claims that defense costs exhaust the SIRs, deductibles, and limits of the Old Republic Policies and trigger the AGLIC Excess Policies."). It further argues that documents related to Giant Eagle's handling of third-party claims "are also relevant to other disputed issues, including whether the Opioid Lawsuits seek damages because of bodily injury and when any purported bodily injury occurred." *Id.*; *see also* ECF No. 308 at 2-3 ("AGLIC seeks to discover whether Giant Eagle documented the Opioid Lawsuits in a manner consistent with its positions in this litigation, i.e., as a claim for damages because of bodily injury during the policy period of one or more AGLIC Excess Policies and which was caused by an accident. AGLIC expects Giant Eagle's internal claims administration documents will show whether, prior to filing this litigation, Giant Eagle input the Opioid Lawsuits into its system as bodily injury claims or claims covered under its general liability insurance, how it described any bodily injury, and whether it included a date when the injury occurred or assigned the claims to a particular policy period.").

Giant Eagle asserts that it has produced non-privileged documents related to the negotiation and purchase of the Old Republic Policies and the Program Agreement, as well as communications between Giant Eagle and Old Republic respecting opioid lawsuits and any reports or records submitted by Giant Eagle to Old Republic under the Program Agreement relating to opioid lawsuits. ECF No. 294 at 2. Giant Eagle argues that any requests for records or reports pertaining to matters unrelated to opioid lawsuits seek irrelevant information and are unduly burdensome. The Court generally agrees with Giant Eagle, at least at this stage, with one exception. AGLIC asserts that "[a]t a bare minimum, Giant Eagle should be compelled to produce all information from its systems relating to the Opioid Lawsuits, not merely correspondence." ECF No. 308 at 2.

This strikes the Court as reasonable, and, to the extent that information related to how Giant Eagle documented the Opioid Lawsuits exists, has not yet been produced, and is not subject to privilege, Giant Eagle shall produce such information. To the extent that Giant Eagle believes that any such information is privileged, Giant Eagle shall produce a privilege log.

Otherwise, the Court agrees that information respecting Giant Eagle's self-administration of its insurance program unrelated to opioid lawsuits need not be produced at this time. Giant Eagle asserts that "[t]his Court already has decided that Giant Eagle's past defense costs did not apply against the Old Republic retentions or deductibles[,]" and that AGLIC and XL seek to continue to litigate an issue on which they have already prevailed. While AGLIC accurately notes that this Court did not extend its holding to all relevant policies, the Court finds that ordering production of information regarding "91,871 third-party claims made against Giant Eagle during the time of the Old Republic Policies at issue," ECF No. 294 at 3, which would entail the search for, review for privilege of, and production of such documents, would be disproportionate and, potentially, a waste of time given the Court's prior rulings in this case.

In ruling that past defense costs do not exhaust the Old Republic retentions or deductibles, the Court looked only to the Old Republic, AGLIC, and XL policies that were *at issue* in Giant Eagle's Motion for Summary Judgment. That said, no party argues that there exists any material distinction between the policies on which the Court has already ruled and those that it has not, and Giant Eagle tacitly acknowledges that the law of the case is likely to result in the same determination respecting past defense costs and all other relevant policies. *See id.* at 2 ("AGLIC and XL wish to continue to litigate an issue on which they have already, pending appeal, prevailed (exhaustion by payment of defense costs)[.]"). Should the Court, with respect to policies it has not yet addressed, ultimately rule inconsistently with its prior decision, AGLIC and XL may renew its

request for the information addressed in this subsection.  As it stands at this juncture, the Court finds that the information requested is minimally relevant, and that the requests are unduly burdensome.  AGLIC's Motion to Compel will be denied as to its request for information respecting Giant Eagle's self-administration of its insurance program for claims unrelated to opioid lawsuits.

### 2.    Documents Concerning Giant Eagle's Evaluation of Its Exposure in the Opioid Lawsuits and Its $6 million Settlement of Certain Opioid Lawsuits

The next category of documents at issue in AGLIC's Motion to Compel consists of documents related to Giant Eagle's evaluation of its potential liability in the underlying opioid cases and its decision to settle certain of those cases.  More specifically, AGLIC explains:

> AGLIC seeks to explore whether Giant Eagle evaluated its potential liability in the Opioid Lawsuits based on particular bodily injuries to specific people, or whether it decided to pay millions of dollars in a settlement on some other basis, such as the financial damages incurred by the municipality plaintiffs in the Opioid Lawsuits. AGLIC's requests regarding Giant Eagle's evaluation of its liability and decision to settle are relevant to other coverage issues, including the number of "occurrences" (if any), when any purported "bodily injury" first manifested, and whether any such bodily injury was accidental or was known or "expected or intended" by Giant Eagle.

ECF No. 291 at 5.  Giant Eagle asserts that it has provided over 300,000 documents responsive to this request, and that any documents reflecting Giant Eagle's analysis and evaluation of Giant Eagle's liability and exposure in the settled opioid cases that have been withheld are protected by the attorney-client privilege and the attorney work product doctrine.  ECF No. 294 at 3-7.  Giant Eagle asserts that it risks waiver of these privileges in the underlying cases should it be compelled to produce these documents to adverse parties such as AGLIC and XL, who have refused all of Giant Eagle's requests for a defense in the underlying actions.

Initially, the Court recognizes, as does AGLIC, that the request at issue certainly seeks documents and information that could be protected by privilege.  AGLIC primarily argues that

Giant Eagle has failed to establish that all of the withheld documents are privileged, and twice suggests that "Giant Eagle should be required to identify responsive documents it has withheld and to set forth its privilege assertions in a privilege log on a document-by-document basis so that they can be evaluated by AGLIC and the Court." ECF No. 308 at 5. This proposal strikes the Court as eminently reasonable. Giant Eagle's concerns over privilege and waiver are presumably not entirely unfounded, but they cannot be fully and properly evaluated without knowledge of those documents that have been withheld and the basis for withholding them. AGLIC's Motion to Compel is granted in part to the extent that Giant Eagle is hereby directed to provide a privilege log identifying responsive documents it has withheld and the basis for withholding said responsive documents.

### 3. Deposition Respecting the Contract Damages Sought by Giant Eagle in Case 1

AGLIC further seeks the deposition of a Giant Eagle representative to testify as to what damages Giant Eagle is seeking under which policies. AGLIC explains:

> Giant Eagle is seeking indemnity for its $6 million settlement payment under at least nine excess policies, each of which is triggered only upon the exhaustion of $2 million in underlying SIRs, limits, and deductibles. Under these circumstances, the $6 million settlement (if covered) cannot trigger all nine of the excess policies. Moreover, whether and under which policy year Giant Eagle can recover, if any, will depend on if there is an occurrence, the number of occurrences, and when any bodily injury(ies) first manifested.

ECF No. 291 at 9. AGLIC asserts that Giant Eagle should be required to state on the record if it is Giant Eagle's position that it has no obligation to allocate its claims among different insurers and policies. *Id*. Giant Eagle argues that contention interrogatories are more appropriate for the legal arguments at issue in this discovery request. At least at this juncture, the Court agrees with Giant Eagle. Giant Eagle's position respecting the information at issue has seemingly been made clear in its prior filings in this case and in its Brief in Opposition. AGLIC has not advanced

sufficient argument justifying a deposition where contention interrogatories will seemingly suffice to provide the information it seeks in a more cost- and time-effective manner.  *See Engage Healthcare Commc'ns, LLC v. Intellisphere*, LLC, No. 12CV00787FLWLHG, 2017 WL 2371834, at *10 (D.N.J. Feb. 10, 2017), *report and recommendation adopted*, No. CV 12-787 (FLW)(LHG), 2017 WL 2367051 (D.N.J. May 31, 2017) ("Moreover, in complex cases, courts have encouraged the use of contention interrogatories instead of a Fed. R. Civ. P. 30(b)(6) deposition.").

Accordingly, AGLIC may propound contention interrogatories on Giant Eagle with respect to the contract damages sought by Giant Eagle.  Given Giant Eagle's assertion that contention interrogatories will provide AGLIC with the information it seeks, the Court anticipates that its answers to such interrogatories will be sufficiently responsive with respect to the information at issue in this specific discovery request.  To the extent AGLIC believes that Giant Eagle has not adequately responded to any such discovery requests such that a deposition might, potentially, be warranted, this Order is entered without prejudice to AGLIC requesting a future Rule 30(b)(6) deposition following Giant Eagle's responses to AGLIC's contention interrogatories.

### G. Motion for a Protective Order on Behalf of Non-Parties Livingston, Chunderlik, and Millward in Case 1 (ECF No. 287)

Non-parties Scott D. Livingston, Esquire, Giant Eagle's co-lead counsel in this matter and in the underlying Opioid MDL cases, and former Giant Eagle employees George Chunderlik and Joseph Millward (collectively, the "Non-Parties") move for a protective order to prevent their depositions that have been noticed by AGLIC and XL in Case 1.  The Non-Parties have filed a brief in support (ECF No. 288), AGLIC has filed a response (ECF No. 297) that XL has partially joined, *see* ECF No. 301,[29] and the Non-Parties have filed a reply (ECF No. 310).

---

[29] XL has joined AGLIC's arguments as to non-parties Chunderlik and Millward.  ECF No. 301.

The Non-Parties argue that the discovery sought by AGLIC and XL is barred by the Third Circuit's holding in *Linn*.  They further argue that the testimony of Millward and Chunderlik is generally unnecessary because these individuals have no knowledge of Giant Eagle's insurance program, and that it is also unnecessarily duplicative as the information sought regarding their knowledge of Giant Eagle's anti-diversion efforts is available from other sources, including the transcripts of three lengthy depositions of these individuals conducted in the Opioid MDL that have already been produced to AGLIC and XL .  Br. in Supp. 1-2, ECF No. 288.  The Non-Parties further assert that "AGLIC's request to depose Mr. Livingston should be denied because requiring Giant Eagle's co-lead counsel in both the Opioid cases and this coverage claim to sit for a deposition provides a unique opportunity for harassment, threatens invasion of the attorney-client privilege, and directly interferes with Giant Eagle's right to choose its counsel."  *Id.* at 2.

### 1.  Mr. Livingston

While depositions of opposing counsel are not per se impermissible, the United States District Court for the Eastern District of Pennsylvania has explained:

> Many courts have found that it is appropriate to grant [a protective] order to prevent the deposition of a party's attorney by an adversary unless he can show that the information sought is relevant, non-privileged and critical to the preparation of the case and that there is no other way to obtain the information. . . .  This is because a deposition of one's attorney by an opposing party is inherently annoying, oppressive, disruptive and burdensome.  "Such a deposition provides a unique opportunity for harassment, it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness."

*Slater v. Liberty Mut. Ins. Co.*, No. CIV. A. 98-1711, 1999 WL 46580, at *1 (E.D. Pa. Jan. 14, 1999) (quoting *Marco Island Partners v. Oak Development Corp.*, 117 F.R.D. 418, 420 (N.D.Ill.1987).  In granting a protective order barring the deposition of opposing counsel, the court in *Slater* explained:

> That a party wishes to ask another party's attorney whether he has "any additional
> information which relates to the case" does not remotely justify the deposition of
> the attorney.  If it did, adversaries in virtually every case could compel the
> depositions of each other's attorney.  Moreover, any relevant information which is
> known to a participating attorney in a pending case and is not protected by the
> attorney-client privilege or work-product doctrine can be discovered by other
> means such as interrogatories and requests for admission or production directed to
> the party.

*Slater* 1999 WL 46580, at *2; *see also Carlson v. N. Am. Specialty Ins. Co.*, No. 21mc0284, 2021

WL 1238948, at *6 (W.D. Pa. Apr. 2, 2021) ("'[U]ndue burden or oppression' [is] measured by:

(1) the relative quality of information in [opposing counsel's] knowledge, that is, whether the

deposition would be disproportional to the [needs of the party seeking the deposition]; (2) the

availability of the information from other sources that are less intrusive into the adversarial

process; and (3) the harm to the [opposing party's] representational rights of their attorney if called

upon to give deposition testimony." (citing *Johnston Development Group, Inc. v. Carpenters Local

Union No. 1578*, 130 F.R.D. 348, 353 (D.N.J. 1990))).

AGLIC has come up well short of establishing that the information it seeks from Mr.

Livingston's testimony would be relevant, non-privileged, or that it could not otherwise be

obtained in another manner.  AGLIC argues that Mr. Livingston, at some point before the

commencement of this litigation, advanced a different legal theory than the one that he (ultimately

unsuccessfully) advanced in moving for summary judgment in this case, and that his testimony is

relevant to whether AGLIC breached its duty to defend.  Specifically, Mr. Livingston stated in a

letter to XL's and AGLIC's counsel that Giant Eagle's payment of defense costs does not erode

the SIRs of the Old Republic Policies.  *See* ECF No. 310 at 2 (pre-complaint letter provided:

"Based upon our review of some but not all of the applicable policies, it appears that each coverage

year has a self-insured retention ('SIR') of $1 million and defense costs do not erode the subject

SIRs.").  As noted, Giant Eagle later successfully advanced the opposite argument, i.e., that the

payment of defense costs does erode the SIRs and limits of the Old Republic Policies, in moving for summary judgment, until this Court ultimately vacated its determination and held that Giant Eagle's payment of defense costs does not erode the SIRs and limits.

Initially, Mr. Livingston's thought processes and legal reasoning are privileged and not subject to discovery. *See* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of [materials prepared in anticipation of litigation], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party/s attorney or other representative concerning the litigation."). Moreover, if he is required to testify, Mr. Livingston risks waiver of multiple privileges and potential disqualification as Giant Eagle's co-lead counsel. This prejudicial effect is substantially amplified because Mr. Livingston represents, and has represented for years, Giant Eagle not only in the cases before this Court, but also in all of the opioid cases that have been brought against Giant Eagle. Further, the fact that an attorney previously advanced a legal theory in a letter to opposing counsel requesting coverage that he eventually abandoned does not justify a deposition. Mr. Livingston's legal theories and arguments respecting potential contract interpretation are inherently non-factual, and thus are either not relevant or protected by privilege. Every lawyer in a breach of contract case is required to interpret, on some level, the contract at issue. AGLIC's argument that the Court should allow a deposition of Mr. Livingston simply because he did so in this case strikes this Court as an untenable proposition. Coupled with the general tenet that a deposition of a party's attorney by an opposing party is inherently annoying, oppressive, disruptive, and burdensome, the Court finds that the 2018 letter provides no basis for a deposition of Mr. Livingston. His request for a protective order will be granted.

### 2. Mr. Millward and Mr. Chunderlik

The requested depositions of Mr. Millward and Mr. Chunderlik clearly relate to the issues discussed above respecting *Linn*'s applicability, as AGLIC and XL seek information from these individuals respecting their "knowledge of Giant Eagle's controlled substance dispensing and distribution operations, compliance, and controls." ECF No. 297 at 5. These issues are relevant to the underlying opioid actions and a potential duty to indemnify, and thus could be barred if *Linn* supplies the standard for determining the duty to indemnify. Accordingly, and consistent with its analysis above, the Court will grant the request for a protective order as to Mr. Millward and Mr. Chunderlik without prejudice to this issue being revisited following the Court's determination as to whether any party owes a duty to defend. The parties are directed to meet and confer to determine whether agreement can be reached as to whether Mr. Millward and Mr. Chunderlik have any information, such as knowledge of Giant Eagle's insurance structure, that could be relevant to the duty to defend only. If they possess such information, the Court is inclined to allow depositions to go forward at this time as to those issues only.

## IV. Conclusion and Order of Court

For the reasons discussed above, the pending motions are granted in part and denied in part consistent with the Court's analysis in this Memorandum Order as follows:

1) AGLIC and XL's Joint Motion to Compel (*Linn*) in Case 1 (ECF No. 280) and Case 2-Only Defendants' Motion to Compel in Case 2 (ECF No. 103) are denied without prejudice to Defendants raising the issues set forth therein following the Court's resolution of any duty to defend arguments at summary judgment. Giant Eagle's Cross-Motion for a Protective Order (*Linn*) in Case 1 (ECF No. 283) and Cross-Motion for a Protective Order (*Linn*) in Case 2 (ECF No. 100) are granted, consistent with the Court's denial without prejudice of Defendants' *Linn* Motions.

2)  Giant Eagle's Motions for Protective Orders (Non-*Linn* Argument) in Case 1 and Case 2 (ECF Nos. 285 and 107, respectively) are denied as premature in light of the Court's holding respecting the *Linn* Motions.

3)  XL's Motion for Protective Order Barring Discovery of Other XL Specialty Policyholder Information and Policyholder Information of Other XL-Affiliated Issuing Companies (ECF No. 272) in Case 1 is granted.

4)  AGLIC's Motion for Protective Order (ECF No. 276) in Case 1 is denied.

5)  Giant Eagle's Motions to Compel in Case 1 and Case 2 (ECF Nos. 274 and 98) are granted in part and denied in part.

6)  AGLIC's Motion to Compel in Case 1 (ECF No. 290) is granted in part and denied in part.

7)  The Motion for a Protective Order on Behalf of Non-Parties Livingston, Chunderlik, and Millward in Case 1 (ECF No. 287) is granted.

8)  Giant Eagle's Motions requesting oral argument (Case 1, ECF No. 315 and Case 2, ECF No. 123) are denied.

9)  Discovery is hereby extended by ninety (90) days from today's date to allow for the discovery discussed herein to take place.  To the extent that any party feels more time is required, they may file a motion to that effect.  Following the completion of the discovery discussed herein, leave is granted for the parties to file motions for summary judgment as to the duty to defend and renewed briefing respecting *Linn*'s applicability, thereafter, if warranted.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 29, 2024

cc: All counsel of record